CAROLENE PRODUCTS CO. *v.* THOMSON.

1. FOOD—STATUTES—PURPOSE—FRAUD—MILK.
    Primary purpose of statute relative to sale of milk and certain
    derivatives to which has been added fat or oil other than milk
    fat, is to prevent fraud of the public through sale of filled milk
    or its fluid derivatives as natural milk or its derivatives whether
    marketed under its true name or a trade or fictitious name
    (1 Comp. Laws 1929, §§ 5358–5360).

2. CONSTITUTIONAL LAW—POLICE POWER—REGULATION OF PRODUC-
   TION AND SALE OF MILK.
    The legislature has power to regulate the production and sale of
    milk and its derivatives.

3. SAME—POLICE POWER—REGULATION—PROHIBITION.
    Police power of regulation does not include the absolute prohibi-
    tion of trade in useful and harmless articles of commerce
    (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16).

4. SAME—RIGHT TO ENGAGE IN BUSINESS.
    The Constitution guarantees to citizens the general right to en-
    gage in any business which does not harm the public (U. S.
    Const. am. 14; Mich. Const. 1908, art. 2, § 16).

5. SAME—PRESERVATION OF PUBLIC HEALTH, SAFETY, MORALS OR
   GENERAL WELFARE—FRAUD.
    The constitutional right to engage in business is subject to the
    sovereign police power of the State to preserve public health,
    safety, morals or general welfare and prevent fraud (U. S.
    Const. am. 14; Mich. Const. 1908, art. 2, § 16).

6. SAME—POLICE POWER—RELATION OF REMEDY TO PUBLIC PURPOSE
   MUST BE REASONABLE.
    In the exercise of the police power there must be not only a public
    welfare to be conserved or public wrong to be corrected, but
    there must be also a reasonable relation between the remedy
    adopted and the public purpose (U. S. Const. am. 14; Mich.
    Const. 1908, art. 2, § 16).

7. SAME—ARBITRARY STATUTES—INVASION OF PROPERTY OR PERSONAL
   RIGHTS.
   The primary determination of public need and character of
   remedy in the exercise of the police power is in the legislature
   and its statute must be sustained unless remedy provided there-
   in is palpably unreasonable and arbitrary so as needlessly to
   invade property or personal rights as protected by the Con-
   stitution (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16).

8. SAME—STATUTES—PRESUMPTIONS.
   Presumption favors validity of a statute and, if the relation be-
   tween the statute and the public welfare is debatable, the legis-
   lative judgment must be accepted.

9. SAME—STATUTES—COURTS.
   The ultimate duty to determine the validity of a statute is in the
   courts.

10. SAME—PROHIBITION—REGULATION.
    Possibility of wrong to the public does not always justify prohibi-
    tion of a business and regulation only may be the reasonable
    remedy (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16).

11. SAME—CONVENIENCE.
    The constitutional guaranties may not be made to yield to mere
    convenience.

12. SAME—STATUTES—INVALIDITY—EVIDENCE—JUDICIAL NOTICE.
    Invalidity of a statute may be shown by things which will be
    judicially noticed or by facts established by evidence.

13. FOOD—VITAMIN A—SKIM MILK—COCOANUT OIL.
    Fact that product, consisting of skim milk and cocoanut oil, does
    not contain vitamin A held, not to justify prohibition of its
    sale as harmful to public health under prohibitory statute
    applicable to products containing vitamin A, addition of foreign
    oils and fats having no effect upon the presence of such vitamin
    (1 Comp. Laws 1929, §§ 5358–5360).

14. CONSTITUTIONAL LAW—FOOD—PUBLIC HEALTH—PROHIBITION.
    Prohibition of manufacture and sale of a nutritious food product,
    harmless to public health cannot be justified under the police
    power to preserve public health since remedy has no reasonable
    relation to the purpose unless it appears that other similar
    products dangerous to health are on the market and prohibi-
    tion of all is reasonably necessary because of impracticability
    of separating the good from the bad (U. S. Const. am. 14;
    Mich. Const. 1908, art. 2, § 16).

15. FOOD—FRAUD—STATUTES.

Evidence of fraud practiced in the sale of a food product consisting of skim milk and cocoanut oils *held,* insufficient to constitute public fraud justifying absolute prohibition of the sale of the product (1 Comp. Laws 1929, §§ 5358–5360).

16. FRAUD—SALES.

The possibility of misrepresentation exists in the sale of any article.

17. CONSTITUTIONAL LAW—FRAUD—PROHIBITION—REGULATION—FOOD.

Possibility of fraud upon public in sale of harmless food product consisting of skim milk and cocoanut oils *held,* insufficient to justify prohibitory statute where regulatory statute could avoid such possibility of fraud (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16; 1 Comp. Laws 1929, §§ 5358–5360).

18. FOOD—PROTECTION OF MILK.

Stringent, even onerous, regulations to protect milk are valid.

19. CONSTITUTIONAL LAW—STATUTES—FOOD—DUE PROCESS.

Statute which fails to establish a standard for milk but prohibits its sale in any form where foreign oils have been added although latter are legally salable and completed product is not dangerous to public health *held,* violative of due process clause of both Federal and State Constitutions (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16; 1 Comp. Laws 1929, §§ 5358–5360).

20. COSTS — CONSTITUTIONAL LAW — STATUTES — DECLARATION OF RIGHTS.

No costs are awarded upon reversal of decree prohibiting sale of a certain milk product in suit for declaration of rights where controlling statute is held unconstitutional (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16; 1 Comp. Laws 1929, §§ 5358–5360).

Appeal from Ingham; Carr (Leland W.), J. Submitted October 29, 1935. (Docket No. 133, Calendar No. 38,496.) Decided June 16, 1936.

Bill by Carolene Products Company, a Michigan corporation, against James F. Thomson, Commissioner of Agriculture, and James F. Warner, Di-

rector of Bureau of Dairying, for a declaration of rights and injunctive relief. Bill dismissed. Plaintiff appeals. Reversed and remanded.

*Judson E. Richardson* and *George N. Murdock,* for plaintiff.

*David H. Crowley,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendants.

FEAD, J. Plaintiff manufactures and sells a milk product under two names—Carolene and Milnut. Defendants' predecessors in office notified plaintiff that the product does not conform to Michigan law and threatened arrest of any dealer selling it. Plaintiff filed petition for declaration of rights and prayed that the invoked statute be declared unconstitutional and defendants restrained from interference with sales. It appeals from decree dismissing the bill.

The product is sold in cans, bearing labels describing its elements and uses as follows:

In the center—

(Not less than          "CAROLENE          (Not less
18% Skim Milk Solids                             than 6%
Total Solids        'So RICH IT WHIPS'      Nut Oils)
    25–½%)
                A Compound of Refined
            Nut Oils & Evaporated Skimmed
                        Milk"

Vertically—

"NOT TO BE SOLD FOR EVAPORATED MILK"

At the side—

"A high grade wholesome food product, composed of a mixture of:

Concentrated skimmed milk and highly refined cocoanut oils.

Especially prepared for use in coffee, baking and for other culinary purposes.

This product complies in all respects with the Federal food and drugs act of June 30, 1906, and is neither adulterated nor misbranded under the provisions thereof."

The Milnut label is substantially the same except as to name.

Testimony was taken. It is undisputed that the label correctly states the ingredients of the product; that both skim milk and cocoanut oil have substantial food value; that the product contains the full food values of both; and has no properties harmful to health.

The statute involved is 1 Comp. Laws 1929, § 5358:

"SECTION 1. It shall be unlawful for any person, firm or corporation, by himself, his servant or agent, or as the servant or agent of another, to manufacture, sell or exchange, or have in possession with intent to sell or exchange, any milk, cream, skim milk, buttermilk, condensed milk or evaporated milk, powdered milk, condensed skim milk, or any of the fluid derivatives of any of them to which has been added any fat or oil other than milk fat, either under the name of said products or articles or the derivatives thereof or under any fictitious or trade name whatsoever. Nothing in this act shall be construed to prohibit the manufacture, sale, exchange or possession of preparations containing milk in any form intended exclusively for the feeding of infants and young children and sold to be used under the order of physicians."

Section two exempts interstate transactions and section three provides criminal penalties for viola-

tion. The statute is Act No. 23, Pub. Acts 1923, and is found in 1 Comp. Laws 1929 in the chapter devoted to "Dairy Products," which contains several acts regulating the production and marketing and prohibiting the adulteration of milk and its derivatives, condensed whole milk, condensed skim milk, butter, imitation butter, renovated butter, oleomargarine, cheese and ice cream. 1 Comp. Laws 1929, §§ 5307, 5394, as amended. In addition, other statutes prohibit adulteration, fraud and deception in the manufacture and sale of articles of food and drink generally. 1 Comp. Laws 1929, § 5425 *et seq.*

The first consideration is the construction of the act.

Because the statute does not differentiate between harmful and harmless foreign oils or fats, it is not an adulteration act. Its evident primary purpose is to prevent fraud of the public through sale of filled milk or its fluid derivatives as natural milk or its derivatives, whether marketed under its true name or under the subterfuge of a trade or fictitious name.

To work out its purpose, the legislature had a choice of remedies, commensurate with the evil and effective to abate it. If protection of the public demanded an inclusive and drastic measure, the legislature could have prohibited the sale of filled milk absolutely and under whatever guise it may be offered. On the other hand, protection of the public might be fully served by regulation and the legislature could have imposed restrictions upon the production and sale.

The State contends the act is prohibitory and forbids the sale of plaintiff's product regardless of actual misrepresentation or deception or fraud. This construction seems necessary because it is in

accordance with the terms of the act, whose language is direct, plain and unambiguous.

The power of the legislature to regulate the production and sale of milk and its derivatives cannot be doubted. But the police power of regulation does not include the absolute prohibition of trade in useful and harmless articles of commerce. Being prohibitory, the act must be declared invalid.

The principles involved are well settled and do not need extensive citation of authorities. The Constitution guarantees to citizens the general right to engage in any business which does not harm the public. *People, ex rel. Valentine,* v. *Berrien Circuit Judge,* 124 Mich. 664 (50 L. R. A. 493, 83 Am. St. Rep. 352). The constitutional right to engage in business is subject to the sovereign police power of the State to preserve public health, safety, morals or general welfare and prevent fraud. In the exercise of the police power there must be not only a public welfare to be conserved or public wrong to be corrected, but there must be also a reasonable relation between the remedy adopted and the public purpose. 12 C. J. p. 929.

The primary determination of public need and character of remedy in the exercise of the police power is in the legislature. Unless the remedy is palpably unreasonable and arbitrary so as needlessly to invade property or personal rights as protected by the Constitution, the act must be sustained. The presumption favors validity and, if the relation between the statute and the public welfare is debatable, the legislative judgment must be accepted. *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich. 204 (53 A. L. R. 273); *Price* v. *Illinois,* 238 U. S. 446, 451 (35 Sup. Ct. 892).

But the ultimate duty to determine the validity of the act is in the courts. *People* v. *Snowberger,* 113 Mich. 86 (67 Am. St. Rep. 449).

Possibility of wrong to the public does not always justify prohibition of a business. Regulation only may be the reasonable remedy.

"The constitutional guaranties may not be made to yield to mere convenience. *Schlesinger* v. *Wisconsin,* 270 U. S. 230 (46 Sup. Ct. 260, 43 A. L. R. 1224). The business here involved is legitimate and useful; and while it is subject to all reasonable regulation, the absolute prohibition of the use of shoddy in the manufacture of comfortables is purely arbitrary and violates the due process clause of the fourteenth amendment." *Weaver* v. *Palmer,* 270 U. S. 402, 415 (46 Sup. Ct. 320).

"Invalidity may be shown by things which will be judicially noticed (*Quong Wing* v. *Kirkendall,* 223 U. S. 59, 64 [32 Sup. Ct. 192]), or by facts established by evidence." *Weaver* v. *Palmer, supra,* 410.

The State contends that plaintiff's product is harmful to public health, not in that it has deleterious properties, but because it does not contain vitamin A, an element of whole milk and cream, which inheres in the cream in the process of skimming, which is wholly or substantially absent from skimmed milk, is not found in cocoanut oil, and is an essential of health. Vitamin A is also lacking in other common articles of food. Hence the need for a balanced diet.

The argument of the State might have force were the statute confined to skimmed milk. But that the act has no concern with the lack of vitamin A is conclusively demonstrated by the fact that (1) it merely prohibits addition to, not subtraction from, milk and its derivatives; (2) the prohibition applies alike to

whole milk and cream, which contain vitamin A, as to skim milk, which lacks it; and (3) the legislature would be guilty of gross inconsistency in permitting, in other acts, production and sale of skim milk *although* it does not contain vitamin A, and, in this act, prohibiting sale of skim milk *because* it does not contain vitamin A, the addition of the foreign oils and fats having no effect upon the presence of such vitamin.

Prohibition of manufacture and sale of a nutritious food product which is harmless to public health cannot be justified under the police power to preserve public health, because the remedy has no reasonable relation to the purpose unless, at least, it appears that other similar products, dangerous to health, are on the market and that prohibition of all is reasonably necessary to protect the public health because of the impracticability of separating the good from the bad. There is no such claim here.

The State also contends that the act may be sustained under the police power to prevent fraud, but it fails to suggest the specific fraud to prevention of which the prohibition of the statute is reasonably related. Defendants made no showing of possibility of fraud in the sale of Carolene except that three grocers in Lansing kept the product on shelves with evaporated milk; one, on inquiry for milk products or evaporated milk exhibited Carolene and two kinds of evaporated milk; and a retailer in Grand Rapids advertised Milnut as giving "better results than ordinary evaporated milk. A blend-evaporated."

Even if they actually deceive, a few casual and individual deceptive offers of a product would not constitute public fraud and, therefore, would not afford such reasonable relation between a public

wrong and the remedy as to justify absolute prohibition of sale of the product. If it were otherwise, the police power over the constitutional right to do business would be without practical limit as the possibility of misrepresentation exists in the sale of any article.

While the testimony does not show it, we gather, from other sources, that the possibilities of fraud lie in (1) sale to the retailer without labeling of the container to indicate the true nature of the product, (2) sale to the consumer on misrepresentation by the retailer through words or conduct as before mentioned, (3) importation into a State and sale in bulk with resale as milk, and (4) serving the product as milk in eating places where the consumer cannot see the label. See Report of Committee on Agriculture and Forestry (Senate, Jan. 3, 1923, 67th Congress, 4th Sess. Report 987) in footnote to *United States* v. *Carolene Products Co.,* 7 Fed. Supp. 500, and decisions hereafter cited. Our State departments having charge of the subject do not claim such frauds exist, except as to the four grocers.

It seems incontrovertible that any possibility of fraud, sufficient in extent to be called public, in the sale of a harmless and nutritive food product may be avoided by regulations as to branding, disclosure of ingredients, kinds and marking of containers, requirement that eating places give notice to customers of its use as is already provided for oleomargarine, 1 Comp. Laws 1929, § 5374, and otherwise. Stringent, even onerous, regulations to protect milk are valid.

Regulations of various sorts have been found adequate for the protection of the public in the sale of other milk products. There has been no attempt, by testimony or argument, to indicate that they

would not be effective in the vending of Carolene, and, in view of the fact that both of the elements of the product are lawful objects of sale in the State, only their union is prohibited and the completed product is harmless, the remedy necessary to avoid infringement upon constitutional rights is by way of regulation, not prohibition. *Weaver* v. *Palmer, supra.* Of course, if the product were harmful, the police power to prohibit would be greater.

The cases in other jurisdictions are few. In *People* v. *Carolene Products Co.,* 345 Ill. 166 (177 N. E. 698), a statute substantially identical with ours was held unconstitutional.

In *State, ex rel. Carnation Milk Products Co.,* v. *Emery,* 178 Wis. 147 (189 N. W. 564), a like statute was held valid. But in the later case of *John F. Jelke Co.* v. *Emery,* 193 Wis. 311 (214 N. W. 369, 53 A. L. R. 463), the court rejected substantially all of the reasoning of the former *Emery Case* and, in effect, overruled it.

This leaves *Hebe Co.* v. *Shaw, Secretary of Agriculture of Ohio,* 248 U. S. 297 (39 Sup. Ct. 125), of special interest because it is the bulwark of the State's case. The *Hebe* opinion is not wholly satisfactory as an adoptive authority because it is not demonstrative. It was by a divided court. And it is at least an open question whether the broad rule of prohibition it announced has not been materially modified by the later statement of the rule of regulation in *Weaver* v. *Palmer, supra.*

Its resemblance to this case is quite superficial. It involved a similar milk product, skim milk and oil, but the court declared the oil was of no consequence. It construed the Ohio statute as prohibiting the sale of condensed skim milk in any form, not merely when mixed with oil. It held the act valid,

as against the Federal Constitution, on the ground that it established a standard of nutritive elements for milk and it was designed to save the public from "fraudulent substitution of an inferior product that would be hard to detect." The court did not indicate the possibilities of fraud nor the possible ineffectiveness of regulation to conserve the public good.

Its distinctions from this case are apparent. The Ohio act, as construed, established a standard of milk for sale, wholly outlawed an inferior grade of milk but only in manufactured or processed form— condensed skim milk. Our statute is much broader. It established no standard of milk, does not purport to outlaw any kind of milk because it is inferior, is not concerned with whether the product is in manufactured or natural form, but prohibits the sale of any kind of milk, whole or skimmed, and of any milk products whether in natural, manufactured or processed form, and although their sale is otherwise permitted by law, on the single contingency of adding foreign oils also legally salable. With such fundamental differences in the acts, the *Hebe Case* should not be accepted as controlling because of superficial likenesses.

The acceptance of the ruling in the *Hebe Case,* its application to our State Constitution and its extension to the statute at bar, would establish a principle with broad effect upon the rights of citizens, producers, tradesmen and consumers. Regardless of the actual purpose of the instant law, the principle would mean that the legislature may impair, as well as conserve, the market for dairy products, prohibit the manufacture and sale of a wholesome article therefrom and prevent citizens with limited incomes from purchasing a food product they want if, per-

chance, the court can imagine that the legislature saw a reality or mirage of fraud in the far distance. Extended to other trade, it would enable the legislature to ban many common articles of commerce, such, for example, as syrup not all maple, shoes not all leather, clothes or comfortables with shoddy in them (*Weaver* v. *Palmer, supra*), and the like.

While it is not to be anticipated that the legislature would abuse the power, experience has demonstrated that constitutional guaranties should not be whittled away and constitutional rights are better maintained and protected by force of the Constitution than by official favor.

We must find and declare, therefore, that the statute is in violation of the constitutional right to do business, secured under the due process clause of the fourteenth amendment of the United States Constitution and article 2, § 16, of our State Constitution. Consequently, the decree will be reversed and one will be entered declaring the act invalid, but without costs. We do not apprehend that injunctive relief is immediately necessary and plaintiff's rights will be fully protected by remanding the cause to the circuit court for such further order or proceedings thereon as circumstances may render advisable.

North, C. J., and Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred. Justice Potter and the late Justice Nelson Sharpe took no part in this decision.