## Carolene Products Co. v. Hanrahan, Commonwealth's Att'y., et. al.

Nov. 28, 1941.

418

Smith & Leary, Samuel M. Rosenstein and Howard C. Knotts for appellant.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

In 1940 the General Assembly of Kentucky passed an act compiled as sections 1905a-60 to 1905a-60f, Carroll's Kentucky Statutes, Baldwin's 1940 Supplement, commonly referred to as the Filled-Milk Act. The Act provides that it shall be unlawful to manufacture for sale within this state, or sell or exchange, any "filled milk" as defined in the Act and penalties are provided for its violation. Filled milk is defined by Section 1 of the Act as "any milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried, or desiccated, to which has been added, or which has been blended or compounded with, any fat or oil other than milk fat, so that the resulting product is an imitation or semblance of milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, * * *".

The appellant, Carolene Products Co., instituted this action against the Commonwealth and County Attorneys of Franklin County and against the State Board of Health and others seeking a declaration of rights and injunctive relief against threatened multiplicity of prosecutions under the Act.

The allegations of the petition are in substance as follows: The appellant has for many years conducted a business in Kentucky involving the manufacture and sale of food products, namely, Carolene, succeeded in 1937 by New Vitamin A Carolene, and Milnut, succeeded in 1937 by New Vitamin A Milnut, the two products being identical in every respect except trade name. Ap-

pellant's products are manufactured by adding to pure sweet skimmed milk (milk from which the butter fat has been removed) refined bland coconut oil of the highest quality, to which is added vitamin A and vitamin B concentrates in constant and adequate quantities of the best grade. This mixture is thereafter evaporated in the same manner as sweet whole or skimmed milk is evaporated in the manufacture of evaporated milks and the product is canned by modern and approved processes. These products are recognized as pure and wholesome food and are in wide use throughout the United States and contain all the known elements of human nutrition found in milk. They are marketed as a distinctive item of food under labels plainly stating the products are prepared for use in coffee, baking and other culinary purposes. The label states that the products are "not to be sold for evaporated milk". The products comply with the Federal Food and Drug laws and with Kentucky laws relating to the adulteration and misbranding of food products. The wholesomeness and healthfulness of the vitamin-fortified products has never been questioned by the Congress of the United States or any of its committees and no public or legislative agency has ever conducted an inquiry as to the wholesomeness or healthfulness of the products. The Act was passed in complete disregard of the findings of the State Board of Health and with knowledge that that body considered that the Act did not involve any question of public health. There is no fraudulent sale of the products in Kentucky or elsewhere and no circumstances attendant to their regulation or sale which might or could give rise to any administrative difficulties. The "products are not manufactured, sold or used in imitation or semblance of milk, cream or skimmed milk, or represented to be an imitation or semblance of milk, cream or skimmed milk or represented to be milk, cream, or skimmed milk" and "there is no similarity in the appearance, taste, flavor, color, package or other characteristics of plaintiff's products with milk, cream, or skimmed milk in any of its forms and the consuming public is fully advised and informed that these are entirely distinctive products." It was then alleged that the Act was unconstitutional as being in violation of the 14th Amendment to the Federal Constitution and Sections 1, 2, 3, 5, 13, 14 and 28 of the Constitution of Kentucky.

The trial court sustained a demurrer to the petition

and dismissed it and this appeal brings in question the correctness of that ruling.

It is contended by appellant that under the allegations of the petition 1) the Filled-Milk Act does not apply to its products and 2) if the Act should be construed to apply to its products, then it is unconstitutional as being in violation of the sections of the Federal and State Constitution above enumerated. For the purposes of brevity and convenience we will consider the contentions of appellant in inverse order.

In considering the constitutionality of the Act, all facts well pleaded in the petition must, of course, be considered as true since the case went off on demurrer. Dennis' Adm'r v. Kentucky & West Virginia Power Co., 258 Ky. 106, 79 S. W. (2d) 377. Equally as obvious is it also that legal conclusions alleged are not admitted to be correct.

The case is largely briefed on both sides on this question of constitutionality as to whether the Act offends the 14th Amendment to the Constitution of the United States, and appellant's brief is replete with persuasive argument as to the unconstitutionality of the statute in the light of that amendment. We think, however, that this question has been definitely set at rest by the Supreme Court in United States v. Carolene Products Co., 1937, 304 U. S. 144, 58 S. Ct. 778, 82 L. Ed. 1234, where an act almost identical with the Kentucky Act was held to be constitutional. That decision is, of course, controlling where the invalidity of a state act is claimed because of an alleged violation of the Federal Constitution. The Supreme Court in that opinion clearly took into consideration not only all the facts alleged in the petition in this case, but the legal conclusions as well in arriving at the decision that the Federal Act (and a similar state act) was not violative of the Federal Constitution. Judicial notice was taken of the findings of a congressional committee (a summary of this report is contained in the opinion) upon which the Federal Act was based to the effect that prohibition of all articles within the prohibited class was reasonably necessary to protect the public health because of fraudulent practices in the sale of such products and the impracticability of separating the good from the bad. The fact that appellant's products, as well as the products of others dealing in articles within the prohibited class, were wholesome

and nutritive, did not render the Act unconstitutional for the reason that Congress was justified in determining that prohibition of the entire class was necessary. Prior to that decision and before the findings of the congressional committee, similar acts had been held unconstitutional as violative of the 14th Amendment in Carolene Products Co. v. Thomson, 276 Mich. 172, 267 N. W. 608; People v. Carolene Products Co., 345 Ill. 166, 177 N. E. 698; and Carolene Products Co. v. Banning, 131 Neb. 429, 268 N. W. 313. The theory underlying those decisions seems to have been that a prohibition of a wholesome and nutritive food product harmless to the public health could not be justified under the police power to preserve the public health because the remedy had no reasonable relation to the purpose unless it appeared that other similar products dangerous to health were on the market and that prohibition of all was reasonably necessary to protect the public health because of the impracticability of separating the good from the bad. The Supreme Court took this theory into consideration and, by taking judicial notice of the report of the congressional committee to the effect that prohibition of all was necessary because of the impracticability of separating the good from the bad, satisfied itself of the existence of a rational basis for the legislation.

In the course of that opinion the Supreme Court said [304 U. S. 144, 58 S. Ct. 784, 82 L. Ed. 1234]:

"Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, Borden's Farm Products Co. v. Baldwin, 293 U. S. 194, 55 S. Ct. 187, 79 L. Ed. 281, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist. Chastleton Corporation v. Sinclair, 264 U. S. 543, 44 S. Ct. 405, 68 L. Ed. 841. Similarly we recognize that the constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular article is without support in reason because the article, although within the prohibited class, is so different from others of the class as to be without the reason for the prohibition, Railroad

Retirement Board v. Alton R. Co., 295 U. S. 330, 349, 351, 352, 55 S. Ct. 758, 762, 763, 79 L. Ed. 1468, see Whitney v. California, 274 U. S. 357, 379, 47 S. Ct. 641, 71 L. Ed. 1095; cf. Morf v. Bingaman, 298 U. S. 407, 413, 56 S. Ct. 756, 759, 80 L. Ed. 1245, though the effect of such proof depends on the relevant circumstances of each case, as for example the administrative difficulty of excluding the article from the regulated class. Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 511, 512, 57 S. Ct. 868, 873, 81 L. Ed. 1245, 109 A. L. R. 1327; South Carolina State Highway Department v. Barnwell Bros., 303 U. S. 177 [192, 193], 58 S. Ct. 510, 82 L. Ed. 734, decided February 14, 1938. But by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it. Here the demurrer challenges the validity of the statute on its face and it is evident from all the considerations presented to Congress, and those of which we may take judicial notice, that the question is at least debatable whether commerce in filled milk should be left unregulated, or in some measure restricted, or wholly prohibited. As that decision was for Congress, neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it."

Appellant seizes on the first sentence of the quoted language as indicative of its right to have a judicial inquiry as to the existence of a rational basis for the Act and contends that the facts alleged in the petition, admitted true on demurrer, negative the existence of such a rational basis. But this contention does not give due consideration to the subsequent language narrowly circumscribing the scope of judicial inquiry as to a rational basis. It is apparent that the Supreme Court in that opinion took into consideration such arguments against the constitutionality of the Act as could be based on any and all facts alleged in the petition in this case. That decision is conclusive on the question of constitutionality of the Act in so far as the federal question is concerned and the fact that since the decision appellant has added vitamins to its product and that there has been no congressional or legislative investigation or report on the subject in no way detracts from its binding effect,

for the addition of the vitamins has the effect only of making its product more wholesome and nutritive and the wholesome and nutritive character of the product was assumed by the Supreme Court when the decision was reached.

This brings us to a consideration of the question whether the Act is violative of the provisions of the Kentucky Constitution referred to. While the Supreme Court decision had no binding effect on us on this question, we are in thorough accord with the reasoning of that opinion and, since the aggregate effect of the restraints imposed on state legislative action by the provisions of the state constitution relied on are in substance the equivalent of the restraints imposed on the states by the 14th Amendment in so far as this controversy is concerned, it is our opinion also that the Act is not violative of the Kentucky Constitution. Nor does the holding in Tolliver v. Blizzard, 143 Ky. 773, 137 S. W. 509, 34 L. R. A., N. S., 890, so strongly relied on by appellant, militate against this conclusion. There a city council attempted by ordinance to make it an offense to sell, or operate a place for the sale of, any except certain designated soft drinks. It was held that the power of prohibition could not be invoked as to certain harmless drinks merely because certain persons, under the guise of selling such drinks, might sell intoxicating liquors. No valid classification was established and it was held that the Act was discriminatory and unreasonable. The court there was not confronted with legislation prohibiting the sale of all articles within a certain class. More nearly in line with the present controversy is Sanders v. Com., 117 Ky. 1, 77 S. W. 358, 1 L. R. A., N. S., 932, 111 Am. St. Rep. 219, in which this court upheld as a valid exercise of the police power an act making it unlawful to sell milk from animals fed on still slop.

Nor is the constitutionality of the Act rendered any less certain by the allegation as to absence of necessity for the legislation by reason of the fact that no others besides appellant are engaged in marketing similar products in this state nor by the allegation that the Act was passed in disregard of the findings of the State Board of Health. There was a rational basis supporting the legislative action, as heretofore indicated, which was in no wise dependent on, or controlled by, findings of the Board of Health and such rational basis extended to

and included an assumption by the Legislature that unless the Act was passed there might be a repetition of conditions bringing about fraudulent sales of filled milk formerly existing as disclosed by the congressional investigation. Of the necessity for legislation the Legislature is the sole judge as long as there is any rational basis supporting its judgment. It is our conclusion that the Act is a reasonable exercise of the police power and that it is not violative of either the Federal or State Constitution.

Coming now to a consideration of appellant's second contention, that the Act does not apply to its product, the first question naturally presenting itself is whether the product is "Filled-Milk" within the meaning of the Act. In short, is the product resulting from the method of manufacture alleged by appellant "in imitation or semblance of milk?" The allegations of the petition in this connection are quoted verbatim supra. The allegation that the product is "not sold or used in imitation or semblance of milk" is insufficient because such allegation does not negative the statutory definition. But the subsequent language of the quoted allegation does, in effect, negative the fact that the product is in imitation or semblance of milk. Ordinarily it might be said that such an allegation was sufficient to remove the product from the terms of the Act, but a consideration of the petition as a whole convinces us that this is not true here. The petition describes fully the method of manufacture, and from these operations our common knowledge tells us that the "resulting product" is at least "in semblance of milk," if not in imitation thereof, allegations to the contrary notwithstanding. We know that when the butter fat is removed from the milk and replaced with a vegetable fat, this operation being followed by evaporation in the same manner as pure milk is evaporated, the resulting product will certainly be in semblance of evaporated milk. Were we in doubt as to the propriety of taking judicial notice of this fact, the doubt is removed by comparison of a sample of appellant's product with one of a standard brand of evaporated milk brought into the case and before this court as an exhibit by appellant. These samples, now before us, reveal that appellant's product is in semblance of evaporated milk and that there is a marked similarity of appearance, texture and taste between the two articles. When considered in their entirety, appellant's allega-

tions are insufficient to show that its product is not in semblance of milk but, on the contrary, establish this to be a fact.

The Supreme Court of Missouri in State v. Carolene Products Co., 346 Mo. 1049, 144 S. W. (2d) 153, 155, in a case which went off on the pleadings as did the instant case, held somewhat similar allegations sufficient to establish that appellant's products did not come within the prohibition of an identical act since the products were not "*sold* * * * in imitation or semblance of milk." We are not in accord with that holding since, under the Act, the question is not whether the resulting product is *sold* in semblance of milk, but only whether it *is* in semblance thereof. It is not a question of whether a fraud is actually committed—the Act is aimed at a product possessing characteristics containing the potentialities of fraudulent use and resulting damage to public health.

The allegations of the petition are also insufficient to establish that appellant's product is so different from others of the prohibited class as to be without the reason of the prohibition. Allegations attempting to differentiate it deal only with the wholesome and nutritive qualities of the product and with the absence of fraud and unfair practices in labeling and marketing. As indicated above, the wholesome and nutritive qualities of the product do not remove it from the prohibited class —the power of the Legislature cannot be denied because an innocent article falls within the class—and as far as appellant's fair labeling is concerned it must be assumed that the Legislature determined that prohibition of false labeling and branding would fail to furnish adequate protection to the public and therefore that complete prohibition, not regulation, was required to accomplish the legislative purpose. That a rational basis for such an assumption exists can hardly be doubted, for, although a majority of actual purchasers might be informed of the nature of the product purchased through fair labeling and marketing, a large proportion of ultimate consumers, namely, those dining at restaurants and boarding houses, as well as those consuming bakery products and confections, would be unable to determine whether the articles consumed were prepared with milk or with a product in imitation or semblance of milk. Such considerations dispose of the argument that the product is so different from others in the class as to be

without the reason for the prohibition and of the argument that the public has been fully informed as to the product and that there is no opportunity or possibility of fraud in connection with its sale.

Many of the allegations of the petition bring into question the wisdom of the Act and the motives of the Legislature in passing it, but it is elementary that legislative motives and the wisdom of the Legislature are not open to question by the courts. Whatever may be our opinion as to the wisdom of the Legislature and the motivating force resulting in the passage of the Act, we cannot escape the conclusion that the Act is constitutional and applicable to appellant's products, which was the conclusion reached by the chancellor.

Judgment affirmed.

The whole Court sitting.