## Commonwealth et al. v. Van Meter et al.

Oct. 16, 1945.

Eldon S. Dummit, Attorney General, and Roy W. House, Assistant Attorney General, for appellants.

B. R. Jouett and George R. Hunt for appellees.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

By their deed of date January 2, 1920, Nelson P. Van Meter, Sr., and wife, Lizzie W. Van Meter, conveyed to their children and grandchildren, appellees herein, a Clark county farm, known as the Renick Place; and on October 14, 1931, they conveyed to the same grantees another Clark county farm, known as the Home Place.

Conceiving that each conveyance was intended to take effect in possession or enjoyment at or after the death of the surviving grantor, and that the land thus conveyed was subject to an inheritance tax as a portion of the estate of Nelson P. Van Meter, Sr., who died March 23, 1942, the Department of Revenue, on June 7, 1944, made a tentative assessment accordingly.

Being unwilling to abide by that assessment, or by any assessment, the grantees in the deeds and the executors of Mr. Van Meter's will, who are likewise appellees, on June 11, 1944, filed the present action, the nature of which is fully indicated by the following portion of the prayer of their petition: "Wherefore, the plaintiffs and each of them pray that it be adjudged by this court that neither of the conveyances hereinabove mentioned was made in contemplation of death, and that said properties are not subject to inheritance taxes; that it be adjudged that the Commonwealth has no lien of any kind on any of said above described real estate, and plaintiffs further pray for their costs herein expended and for all other just and proper relief."

The appellant's general and special demurrers and plea to the jurisdiction of the court having been overruled, and the action having been submitted for judgment on the record, which included all necessary pleadings and certain stipulations and evidence, the court entered a judgment cancelling the tentative assessment which had been made by the taxing authorities, and adjudged that they had no lien on the lands mentioned.

On this appeal only two questions are material: (a) Should the real estate mentioned be included for in-

heritance tax purposes in the valuation of the property owned by Nelson P. Van Meter, Sr.? (b) Did the Clark circuit court have jurisdiction to entertain the action?

We shall consider the questions in the inverse order of their statement.

(b) In their contention that the Clark circuit court did not have jurisdiction of the subject matter, the appellants rely upon KRS 131.110(1), KRS 131.120(1), KRS 140.140(1); Reeves v. Fries, 292 Ky. 450, 166 S. W. 2d 985, and cases therein cited; Reeves v. Service Lines, Inc., 291 Ky. 410, 164 S. W. 2d 593, and cases therein cited.

Insofar as pertinent to the question under consideration KRS 131.110(1), KRS 131.120(1), and KRS 140.-140(1) read:

"131.110 (4114h-4; 4114h-5) *Appeal to Kentucky Tax Commission by taxpayer.* (1) Any aggrieved taxpayer may, within fifteen days from date of notice of any tax assessment, order, ruling or finding of any officer or agent of the Department of Revenue, petition the department for a review thereof by the Kentucky Tax Commission."

"131.120 (4114h-5; 4114h-6) *Appeal to Franklin circuit court from commission.* (1) If an aggrieved taxpayer has petitioned for review, as provided in KRS 131.110, he may, within fifteen days after the mailing of notice of the final decision of the Kentucky Tax Commission, appeal from the decision on any question of law, including adequacy of evidence, to the Franklin circuit court."

"140.140 (4281a-31) *Payment of estate tax under protest; action to recover; refund.* (1) No suit shall be maintained in any court to restrain or delay the collection or payment of the tax levied by KRS 140.130. The aggrieved taxpayer shall pay the tax under protest as and when required, and may at any time within two years from the date of such payment sue the state through the Department of Finance, in an action at law in any state or Federal court having jurisdiction of the parties and subject matter, for the recovery of the tax paid with legal interest thereon from the date of payment."

The first two sections are merely permissive and general in their provisions; they are not obligatory nor

restrictive. The first—131.110(1)—accords to the taxpayer the right to have the order or finding of the Revenue Department reviewed by the Tax Commission; the second—131.120(1)—merely provides that if the taxpayer is dissatisfied with the action of the Tax Commission he may appeal to the Franklin circuit court. The third section—140.140 (1)—does not relate to inheritance taxes, which are levied in virtue of 140.010, but is restricted to estate taxes, which are imposed in virtue of 140.-130(1). And neither nor all of these sections are sufficient to sustain the view that a taxpayer, against whose property an inheritance tax lien is being asserted, may not avail himself of the procedure and remedy which KRS 140.200 purports to provide, to-wit: "140.200 (4281a-39) *Action to remove tax lien.* An action may be brought against the state by any interested person to quiet the title to any property against the lien or claim of lien of any tax under this chapter, or to have it determined that any property is not subject to a lien for taxes nor chargeable with any tax under this chapter. No such action shall be maintained when any proceedings are pending in any court in this state wherein the taxability of such transfer, the liability therefor and the amount thereof may be determined. All parties interested in the transfer and in the taxability thereof shall be made parties to the action, and any interested person who refuses to join as plaintiff may be made a defendant. Summons for the state in the action shall be served upon the Commissioner of Revenue."

Since this is an action by the appellees to quiet their title to property against which the state is asserting an inheritance tax lien; since it is not disclosed by the record nor contended by the appellants that a proceeding was pending in any other court wherein the taxability of the transfers in question or liability therefor might be determined; and since the land is located in and the appellees are residents of Clark county, it is our view that appellants' objection that the Clark circuit court was without jurisdiction is untenable.

What we said in the appellants' cited cases of Reeves v. Fries and Reeves v. Service Lines, Inc., has no application here. The first mentioned of those cases involved alleged liability for income taxes, while the second was an action to restrain the Auditor of Public Accounts from the collection of an ad valorem tax on a franchise valua-

tion. Likewise Lexington Cemetery Company v. Commonwealth, 297 Ky. 851, 181 S. W. 2d 699; Conner v. Parsley, 192 Ky. 827, 234 S. W. 972, and each and all of the foreign authorities upon this point are without application here for the reason that in none of them was the court confronted with KRS 140.200 or with a comparable statute.

(a) If the properties transferred are to be included, for inheritance tax purposes, in a valuation of the property owned by Mr. Van Meter, Sr., it must be on the theory that the transfers were made in contemplation of his death, or because they were intended to take effect in possession and enjoyment at or after his death.

That the transfers were not made in contemplation of death being conceded in appellants' brief, from which we quote: ''It is stipulated and admitted to be true that Nelson P. Van Meter, Sr., on January 2, 1930, and on October 14, 1931, was in good health and that he continued to be in good health up to a very short time, not more than a few weeks prior to his death on March 23, 1942, and that said Van Meter so far as he was advised or knew and so far as his doctor could ascertain or his family observe, was on and after January 2, 1930, up to a few weeks prior to his death, free from disease. The proof shows him to have been of a cheerful disposition, interested in the present and future welfare of his children and in the current events of the day and able to transact business matters. Several years had passed since the making of the transfers in question and the presumption to be indulged is that these transfers were not made in contemplation of death. The evidence is barren of any proof to show said conveyances were made in contemplation of death. In these circumstances it seems clear these transfers were not made in contemplation of death,'' this branch of the case narrows itself to the simple issue of whether the transfers were intended to take effect in possession and enjoyment at or after Mr. Van Meter's death.

The two conveyances are so similar in wording, purpose and effect that, in a consideration of the question thus presented, we shall quote only from the Renick deed, the germane portions of which are:

''For and in consideration of the sum of ten thousand dollars ($10,000.00), evidenced by a promissory

note of even date herewith of the parties of the second part, payable to the parties of the first part on or before January 1, 1933, and bearing interest at the rate of 6% per annum, payable annually, from date until paid, said note providing that the first parties shall look for the payment of same alone to the land hereinafter described, and that same is not and shall not be a personal obligation of any of the makers; and in consideration of the second parties, after the above mentioned ten thousand dollars ($10,000.00) with interest has been paid in full, paying on the 1st of April, July and October and 31st of December of each year to the parties of the first part, so long as they or either of them shall live, the sum of seven hundred and fifty dollars ($750.00), the parties of the first part do hereby sell, alien, transfer and convey to the parties of the second part the hereinafter described real estate upon the condition, terms and limitations herein stated.

"The property hereinafter described is conveyed by first parties and is accepted by the second parties upon the following conditions, terms and limitations:

"This instrument conveys to each of the parties of the second part a one-fifth undivided interest for his or her life in the hereinafter described real estate, with remainder to his or her child or children, but should any of the second parties die without leaving a child then the interest of such party shall pass to and belong equally to the then living herein named second parties, or their children, if such parents be dead, the children to take the parent's part.

"The property hereinafter described may, during the life of first parties, or either of them, be divided and/or sold and conveyed only by and with the consent of said first parties, or the survivor, and such division and/or sale and conveyance or conveyances therefor are authorized to be made and executed by the parties and are to have the same effect as though no remainder interest existed or was created by this instrument.

"Whenever any of the property hereinafter described is sold, whether before or after the death of first parties, the proceeds shall be reinvested in real estate of approximately the same value as that sold, the grantee to own and hold same as that herein conveyed is held.

"If the property hereinafter described, or any of it, is sold or divided after the death of first parties, the right to make conveyance for such sale or division shall be procured in the manner provided by law.

"If second parties should, during the life of first parties, or either of them, fail to agree upon the rental price of the property, the terms and conditions, or the tenant, the parties of the first part, or the survivor, shall have the right to finally settle and determine any and all such questions or disputes. * * *

"To secure the payment with interest of the herein mentioned ten thousand dollars ($10,000.00) and the quarterly payments of seven hundred and fifty dollars ($750.00) a lien is retained in favor of the first parties upon and against the above described real estate.

"To have and to hold the above described property, together with all the privileges and appurtenances thereunto belonging, to the parties of the second part according to the conditions, terms and limitations hereinabove set forth.

With respect to this branch of the case counsel argue:

"The grantors in the two deeds conveyed absolute title. No right, title or interest was reserved in the land conveyed by the grantors; there was no provision for a reversion, nor was there any right of reverter. The grantors did not reserve the right to alter, change or modify the deeds executed, nor did they reserve the right to change the beneficiaries thereunder, or the right to revoke or control the method of handling the land conveyed in any manner.

"Opposing counsel on page 19 of their brief state that a limited amount of control was reserved by the grantors in the two deeds. There is no basis for this statement. It is true that the deeds in question provided that the land could be sold by the life tenants, for the purposes of reinvestment, provided the grantors, or the survivor of them, consented to such sale. The life tenants were not given the power to sell, except under the condition named. It was provided in the deeds that, after the death of both grantors, the land could be sold for purposes of reinvestment in the manner provided by law. The proceeds of any sale made were required to be rein-

vested in other property, the title to which was required to be taken to the grantees, to be held in the same manner as provided in the deeds. The grantors in the deed, in the event of sale, received nothing and could not profit in any way out of the proceeds of any sale made. It was further provided in each of the deeds that, if the grantees, during the life of the grantors, or the survivor, failed to agree among themselves upon the rental price of the property, or the terms and conditions of any lease made, then the grantors had the right to act as arbitrators and settle finally any controversy that might arise. These two provisions did not provide for any control by the grantors, or either of them, either in the sale of the property or the renting thereof.

"In the deed to the Renick place, dated January 2, 1930, it was provided that the grantees should pay to the parties of the first part, on or before January 1, 1930, the sum of $10,000.00, with interest thereon, and that the note executed for such payment should bind the land but not the individual grantees. It was further provided in the deed that, after the $10,000.00 had been paid, the grantees should pay to the parties of the first part, 'so long as they, or either of them shall live, the sum of $750.00 per quarter.'

"The quarterly payments were not described as rent. The grantors in the deed did not have the right to collect such quarterly payments as rent, or in the collection of such payments to use the remedies provided by statute for the collection of rents by the landlord. The quarterly payments to be made were secured by a lien on the real estate. These payments cannot be construed as rent and were not limited to the amount collected as rent, or to the profits on the land, if operated by the grantees. It makes very little difference in this case from a legal standpoint whether such payments be construed as annuities or as a part of the consideration. The effect is the same. The land was conveyed subject to the charges referred to in the deed.

"In the deed of date October 14, 1931, the grantees agreed to pay to the grantors, 'so long as they or either of them shall live' the sum of $875.00 quarterly. The same argument relates to the provisions of this deed, as that made to the provisions of the deed dated January 2, 1930.

"The five grantees mentioned in this deed, according to the testimony, leased the tracts of land described to the two sons of Nelson P. Van Meter, upon the agreement on their part to pay to Nelson P. Van Meter and Lizzie W. Van Meter, his wife, the quarterly payments agreed to be paid by the grantees under the two deeds in question, and upon the further agreement that the lessees would pay the taxes held by them under lease, and make necessary improvements.

"Nelson P. Van Meter, Jr., testified that possession of the land in question was delivered to the grantees under the deeds, immediately upon the execution thereof, and that the land conveyed by the two deeds was managed, operated and controlled by the grantees thereunder. He further testified that the rental value of the property varied at different times, at times it was high and at the time his deposition was given the amount agreed to be paid was cheap. This witness further testified that if the farm did not yield from the operation thereof a sufficient amount to pay the quarterly payments referred to in the deeds, money was borrowed to make such payments. The payment of the annual sums did not depend upon the rental value of the land, or the profits obtained from the use thereof. The annual payments did not issue from the land, and were required to be paid as fixed obligations, independently of profits derived."

We accept counsel's argument and hold: (a) that neither of the transfers was made or intended to take effect in possession or enjoyment at or after the death of Mr. Van Meter; (b) that in neither of the transfers did he retain for any period of time the possession or enjoyment of, or the income from the property; and (c) that in neither of the transfers did he retain the actual or contingent power to designate the person who should possess the property or the income therefrom. And having so held, the other points discussed in the respective briefs become immaterial.

Appellants' cited cases are readily distinguishable in their facts and are not applicable to the transfers herein involved.

Judgment affirmed.