486 P.2d 1021

**SUN RAY DRIVE-IN DAIRY, INC.,**
**Plaintiff-Respondent,**

v.

**Stanley I. TRENHAILE, Commissioner of the Department of Agriculture of the State of Idaho, Defendant-Appellant.**

**No. 10473.**

Supreme Court of Idaho.

July 14, 1971.

7. I.C. § 16-1838.

8. I.C. § 20-701 (Western Interstate Corrections Compact, art. IV [a]).

9. I.C. § 20-223.

W. Anthony Park, Atty. Gen., and Warren Felton, Asst. Atty. Gen., Boise, for appellant.

Homer E. Martin, Boise, for appellee.

DONALDSON, Justice.

This is an appeal from a declaratory judgment and an injunction issued by the district court declaring the Idaho "Filled Milk" law unconstitutional and restraining the Idaho Department of Agriculture from enforcing the statute against the Sun Ray Drive-In Dairy, Inc. (plaintiff-respondent). The pertinent statutes involved in this controversy are as follows:

"37–1102. Terms defined.—Whenever used in this chapter the term 'person' shall include an individual, partnership, corporation or association. The term 'filled milk' shall mean any milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried, or dessicated, to which has been added, or which has been blended or compounded with any fat or oil other than milk fat, so that the resulting product is in imitation or semblance of milk, cream, or skimmed milk, whether or not condensed, evaporated concentrated, powdered, dried, or dessicated. This definition shall not include any distinctive proprietary food compound not readily mistaken for milk or cream or for evaporated, condensed, or powered milk or cream."

"37–1103. Manufacture and sale unlawful.—It is hereby declared that filled milk as herein defined is an adulterated article of food, injurious to the public health, and its sale constitutes a fraud upon the public. It shall be unlawful for any person to manufacture or sell or offer for sale within the state of Idaho, any filled milk."

This action arose when Sun Ray Drive-In Dairy, Inc., desiring to market a beverage called "Farmer's Daughter," but hesitant to do so for fear of violating Idaho's "Filled Milk" law, initiated an action in district court for the purpose of determining the constitutional validity of the statute. Plaintiff furthermore requested the district court to issue a permanent injunction restraining the Idaho Department of Agriculture from enforcing the Filled Milk law against it. The case was submitted to the district court on stipulated facts and the district court granted the relief requested because:

"I see no reason for prohibition of what would otherwise be a lawful business when it appears that that business is in fact not harmful to the general public and little different from many other existing businesses merchandising food products. Any fraud, deception or danger to the public can be handled by legislation requiring honest labeling of the product and

prohibiting misleading packaging and advertising." [1]

The district court then concluded that Chapter 11 of Title 37, Idaho Code, was in violation of the due process of law under Section 13, Article 1 of the Idaho Constitution and the Fourteenth Amendment to the Constitution of the United States as applied to plaintiff's product "Farmer's Daughter Hi-protein Drink," and that the Commissioner of Agriculture should be permanently enjoined from enforcement of Chapter 11 of Title 37, Idaho Code, in respect to plaintiff's product "Farmer's Daughter Hi-protein Drink." The Commissioner of Agriculture has appealed the decision of the district court and claims that the court erred in holding that Chapter 11 of Title 37, Idaho Code, violates due process of law, (a) under Section 13, Article 1 of the Idaho Constitution, and (b) under the Fourteenth Amendment of the Constitution of the United States, as applied to plaintiff's product.

We hereby affirm the action taken by the district court. This lawsuit in essence attacked the validity of the Idaho Filled Milk law. The respondent claims that the Idaho Filled Milk law violates the Idaho and Federal Constitutions in that it deprives respondent of its property without due process of law. The State contends that the law is a valid exercise of the police power of the State to regulate the manufacture and sale of food and food products in the interest of public health and to prevent the perpetration of fraud upon the public. Although legislative enactments have attached to them a presumption of validity, this presumption is rebuttable by demonstrating that the law violates a constitutionally protected right, such as the right to do business. Cole-Collister Fire Protection District v. City of Boise, 93 Idaho 558, 468 P.2d 290 (1970). In the case at bar the facts indicate that the product in question is in no way harmful or injurious to health. The parties in their Stipulation of Facts, Paragraph VII, No. 8, stipulated:

"8. That each of the constituent items of plaintiff's product is a wholesome, harmless and nondeleterious and safe product for human consumption, and the main ingredients are regularly used for food in large quantities and may be sold by themselves or in conjunction with other food products without violation of law."

Thus the prohibition of the manufacture and sale of a nutritious food product which is harmless to public health cannot be justified under the police power because the remedy has no reasonable relationship to the purpose. Whether or not an article of food is adulterated and injurious to public health and a fraud on the public is a question of fact to be determined by the court and a statute declaring conclusively that a mixture of harmless, healthful food produces an adulterated food injurious to the public health and its sale constitutes a fraud upon the public, invades the province of the judiciary. State v. A. J. Bayless Markets, Inc., 86 Ariz. 193, 342 P.2d 1088 (1959); Carolene Products Co. v. McLaughlin, 365 Ill. 62, 5 N.E.2d 447 (1936). In the court below the parties, in their Stipulation of Facts, Paragraph VII, stipulated as follows:

"3. That Plaintiff's product is marketed and offered for sale in a manner which does not deceive or mislead the consuming public.

"4. That Plaintiff's product is not sold or advertised as a substitute for milk or as an imitation milk."

Thus there was also no issue of fact concerning fraud before the district court. Therefore, the only issue to decide is whether the statute enunciates any other valid reason for prohibiting the sale of the product. The State contends that another valid reason for the Idaho Filled Milk law is "to forbid the competition of non-dairy fats or oils with the American cow." We feel that this contention is best answered by quoting from the case of John F. Jelke Co. v. Emery, 193 Wis. 311, 214 N.W. 369 at

1. Memorandum decision of the district court.

373 (1927), which involved the prohibition of the sale of oleomargarine. That Court said:

"Under the facts proven in this case, whatever the economics of the situation may be, from the standpoint of constitutional right the Legislature has no more power to prohibit the manufacture and sale of oleomargarine in aid of the dairy industry than it would have to prohibit the raising of sheep in aid of the beef cattle industry, or to prohibit the manufacture and sale of cement for the benefit of the lumber industry. In some cases a proper exercise of the police power results in advantage to a particular class of citizens and to the disadvantage of others. When that is the principal purpose of the measure, courts will look behind even the declared intent of Legislatures, and relieve citizens against oppressive acts, where the primary purpose is not to the protection of the public health, safety, or morals. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, and cases cited in Rose's Notes, page 541."

Thus the State of Idaho has failed to present evidence or facts tending to show any other valid reason for prohibiting the sale of the product. Although the statute was originally clothed with a presumption of validity, it has been overcome by facts presented to the district court which indicate that the law as applied to the respond-ent, Sun Ray Drive-In Dairy, Inc. is unconstitutional.

■ Although the Court is aware that there is a line of decisions contrary to ours,[2] it has long been the rule of this Court that legislative acts must bear a reasonable relationship to the purpose for which the police power may be exercised. Smith v. Costello, 77 Idaho 205, 290 P.2d 742 (1955). See also, Coffee-Rich, Inc. v. Commissioner of Public Health, 348 Mass. 414, 204 N.E.2d 281 (1965). Some of the Filled Milk statutes of other states actually state that the purpose of the law is to protect the public from confusion between milk and substitute milk products.[3] However the Idaho law does not seek to prevent such substitution or confusion. Furthermore, the parties stipulated as heretofore noted in subparagraph 3 of Paragraph VII of the Stipulation of Facts that the plaintiff's product does not deceive or mislead the consuming public and subparagraph 10 states that there is no similar product being sold in Idaho that is inherently unsafe or dangerous to the public health.

The district court correctly decided the issues presented by this appeal. Numerous jurisdictions have adopted the rule we follow here today. People v. Price, 257 Ill. 587, 101 N.E. 196 (1913); Carolene Products Co. v. Thomson, 276 Mich. 172, 267 N.W. 608 (1936); Defiance Milk Products Company v. Du Mond, 132 N.E.2d 829 (N.Y.1956); Carolene Products Co. v. Ban-

2. Reesman v. State, 74 Wash.2d 646, 445 P.2d 1004 (1968); Setzer v. Mayo, 150 Fla. 734, 9 So.2d 280 (1942); Carolene Products Co. v. Mohler, 152 Kan. 2, 102 P.2d 1044 (1940); Carolene Products Co. v. Hanrahan, 291 Ky. 417, 164 S.W.2d 597 (1942); Carolene Products Co. v. Harter, 329 Pa. 49, 197 A. 627, 119 A.L.R. 235 (1938).

3. "The declared legislative purpose motivating the enactment of the Washington Filled Dairy Products Act is stated in RCW 15.38.001 as follows:

Filled dairy products resemble genuine dairy products so closely that they lend themselves readily to substitution for and confusion with such dairy products and in many cases cannot be distinguished from genuine dairy products by the ordi-nary consumer. The manufacture, sale, exchange, purveying, transportation, possession, or offering for sale or exchange or purveyance of filled dairy products creates a condition conducive to substitution, confusion, deception, and fraud, and one which if permitted to exist tends to interfere with the orderly and fair marketing of foods essential to the well-being of the people of this state. It is hereby declared to be the purpose of this chapter to correct and eliminate the condition above referred to; to protect the public from confusion, fraud and deception; to prohibit practices inimical to the general welfare; and to promote the orderly and fair marketing of essential foods." Reesman v. State, *supra*, 445 P.2d at 1007, 1008.

ning, 131 Neb. 429, 268 N.W. 313 (1936);
State v. A. J. Bayless Markets, Inc., *supra*.

Judgment affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN and
SPEAR, JJ., concur.

SHEPARD, J., sat but did not partici-
pate in the opinion.