## 2326. RIGBERS *v.* CITY OF ATLANTA.

1. A municipality, under its general welfare clause, may by ordinance regulate, in the interest of the public health, the sale of milk and milk products.

2. While a municipality, under its general welfare clause, may prohibit the sale of ice cream which is adulterated, or contains any deleterious substance, or is otherwise impure or unwholesome, it can not arbitrarily prescribe that ice cream containing less than a certain percentage of butter fats shall not be sold at all, where the percentage is placed so high as to be unreasonable, in that it excludes the sale of ice cream just as wholesome and in some cases more wholesome than that of the prescribed percentage would be.

3. Even if a municipality is authorized to prescribe standard grades of foodstuffs (the standards not being fixed upon any basis of protection to the public health or sanitation) for the purpose of protecting the public from frauds and impositions in the quality of the commodity offered for sale, the ordinance should proceed by a plan of regulation only, and should not absolutely prohibit the sale of useful and valuable commodities not coming up to the prescribed standard.

(a) Even if the City of Atlanta has the power to fix upon a standard of richness as to ice cream sold in the city, it has no power to prescribe that wholesome ice cream below that standard shall not be sold at all under any name or designation.

Certiorari; from Fulton superior court—Judge Pendleton. December 10, 1909.

Argued January 13,—Decided February 10. 1910.

*George Gordon,* for plaintiff in error.

*James L. Mayson, William D. Ellis Jr.,* contra.

POWELL, J. Rigbers was convicted, in the recorder's court of the City of Atlanta, of the violation of §35 of an ordinance of that

city, adopted March 7, 1907, and bearing the following title: "Governing the sale of milk and regulating the sanitary conditions of dairies and milk depots in Atlanta, Ga." The ordinance is somewhat lengthy, and it will not be necessary to set forth its general detail further than to say it makes a number of very reasonable and wholesome provisions in regard to the sale of milk and milk products in the city. Rigbers, however, was charged with violating that portion of the ordinance which prescribes that "ice cream sold or kept for sale must contain at least 10 per cent. butter fats for fruit ice cream, and 12 per cent. for plain ice cream." It was shown that the ice cream sold by Rigbers contained slightly less than 10 per cent. of butter fats. On the trial he offered evidence tending to show that ice cream containing materially less butter fat than that prescribed by the ordinance was equally as wholesome and as sanitary as that containing the amount prescribed. This evidence was rejected, and the exclusion of it afforded the basis of one of the exceptions in the record. The case came to the superior court on certiorari; and the exception is to the overruling of the certiorari.

No express power has been granted to the City of Atlanta to pass the ordinance in question. The city's right to adopt it depends on the general welfare clause of its charter. Undoubtedly the ordinance for the most part is a valid exercise of the city's police power. Milk is not a luxury; it is a necessity. Babies, the tender seed-corn of the race, are vitally dependent upon it. When it is clean and pure and free from deleterious contamination, it is the most wholesome of all foods. When it is impure, it is a menace and a danger of such great proportions as to be difficult of estimation. Therefore, so far as this ordinance is designed to protect the inhabitants of the City of Atlanta in getting a pure, wholesome supply of milk, it is of unquestionable validity.

Ice cream, however, is a luxury rather than a necessity. Still, since it is a foodstuff, the regulation of the sale of it, so far as is necessary for the prevention of impurities, adulterations, and other similar things likely to affect the health of those using it, is also within the police power of the city; and if this ordinance, so far as the sale of ice cream is concerned, had that end in view, the court should not declare it to be unreasonable or beyond the powers granted by the city charter. The complaint against the defend-

ant's ice cream was not that it was impure or that it contained deleterious substances, or that it was likely to affect the public health, but that it was not rich enough in butter fats. The defendant, for the purpose of showing the invaliditiy of the ordinance as a health measure, offered to prove that the presence of this amount of butter fats was not essential to the ice cream's being healthful—that the ice cream he was selling was just as good, from a sanitary standpoint, as ice cream of the character prescribed by the ordinance would be. This evidence was admissible. The rule is that where an ordinance is not passed by express authority of the legislature, the courts may inquire into its reasonableness, and to that end may hear testimony.

It is plain, from the ordinance itself, however, that 10 per cent. or 12 per cent. of butter fats is not essential to the wholesomeness of milk or milk products; for, as to the milk itself, there is a prescribed percentage of 3.6 per cent. of butter fats.

Indeed, to state the matter with perfect fairness, the city does not really insist that the portion of the ordinance relating to the richness of ice cream was enacted for the protection of the public health, but rather insists that this part of the ordinance is valid as a measure for the protection of the members of the general public against being cheated by having ice cream of inferior value furnished them. It may be a serious question as to whether the provisions of the pure-food law of this State are not broad enough to take away from municipalities the right to prescribe standards of foodstuffs for the purpose of protecting the public from impositions not directly affecting the public health, but it will not be necessary to decide that point here. It will be noticed that under this ordinance the prohibition is not against selling ice cream of less than the prescribed percentage, as ice cream, but against selling it at all. Though the seller distinctly informs the purchaser that the ice cream contains less butter fats than 10 per cent., the sale is unlawful, according to the ordinance. Even if the city has the power to prescribe that no ice cream of less than a certain percentage of richness in butter fats shall be sold as standard ice cream, it still would not have the power to say that ice cream below that standard should not be sold at all. For instance, it might be permissible to say that the term "ice cream," or "standard ice cream," or "first-class ice cream," should relate only to ice

cream of a certain prescribed richness, and that whoever sold ice cream of poorer quality should, either by calling it under some other name, or by indicating on the vessel in which it is delivered, or otherwise, disclose the inferiority of its quality. But under the ordinance before us, if a physician desired that a patient should have ice cream, but did not deem it safe for him to take the richer ice cream, it would be illegal for any one to furnish the grade of ice cream actually suited to the sick man's physical condition.

The court is willing to give every encouragement within legitimate bounds to the public authorities in their laudable effort to protect the public not only against unsanitary food products, but also against adulteration, frauds, and impositions in the sale of food products, and where the question is doubtful, the doubt will be solved in favor of the regulation; but to say that in a city the size of Atlanta no one shall under any circumstances, or for any purpose, sell any ice cream containing less than 10 per cent. butter fats is so unreasonable that the ordinance can not be upheld, where the city's power to pass it rests solely upon the authority of the general welfare clause of its charter.          *Judgment reversed.*