342 P.2d 1088

STATE of Arizona, Plaintiff,

v.

A. J. BAYLESS MARKETS, INC., a corporation, Alfred M. Lewis, dba Orange Empire, a Co-op., Joseph Naifeh, dba Russ Keaton Save Way Market and Imperial Ice Cream, Inc., a corporation, Defendants.

No. 1158.

Supreme Court of Arizona.

July 24, 1959.

Wade Church, Atty. Gen., John Vanlandingham and H. B. Daniels, Asst. Attys. Gen., Charles C. Stidham, County Atty., Donald D. Meyers, Deputy County Atty., Phoenix, for plaintiff.

Shimmel, Hill & Kleindienst, Phoenix, for defendants.

PHELPS, Chief Justice.

There was certified to us in this case under the provisions of Rule 346, of Rules of Criminal Procedure, 17 A.R.S., the question of whether A.R.S. §§ 3–630 and 3–632 as applied to the sale or the intent to sell imitation ice cream and imitation ice milk as alleged in the information filed herein are contrary to the provisions of the constitution of the United States and of the state constitution.

The law under which the prosecution is brought provides as follows:

"§ 3–630. \* \* \* \*

"A. It is unlawful for a person to manufacture, sell, exchange or have in possession with intent to sell or exchange, any milk, cream, skim milk, buttermilk, condensed or evaporated milk, powdered milk, cheese or cheese product, condensed skim milk, ice cream or iced milk, frozen custard, ices or sherbert or any fluid derivative thereof to which has been added fat or oil other than milk fat. \* \* \*.

"B. \* \* \* \* \*

"C. No person shall produce, sell, offer or expose for sale or have in his possession with intent to sell, a dairy product which is adulterated or misbranded. \* \* \*."

It is stipulated by and between counsel for the state and counsel for the defendant that defendant Imperial Ice Cream Compa-

ny is a corporation organized under the laws of the state of California and is engaged in the manufacture and sale of "Imitation Ice Milk" and "Imitation Ice Cream"; that its products are sold and delivered in California at its place of manufacture to persons who transport such products from California to Arizona and distribute and sell the same in this state; that defendants are some of the persons who distribute and sell said products in Arizona; that the manufacturer owns and operates a modern sanitary and hygienic plant for the purpose of producing and selling its products; *that the products are nutritious, wholesome and healthful* and that the ingredients used therein and the percentage they bear to the entire product are as follows: vegetable fat 6%; non-fat dry milk solids 11%; liquid sugar 9¼%; liquid corn sugar 9%; stabilizer and emulsifier .49%; vanilla flavoring .14%; and water 64.12%; that these ingredients are processed and brought into solution under agitation and under proper temperatures, and in texture, body, taste and other physical characteristics cannot be readily distinguished from ice cream and ice milk.

There is attached to the record a photostatic copy of a half gallon carton constituting the original package in which the product is placed for sale. This clearly indicates the character of its contents. It has printed in large letters apparently on both sides thereof the words, "Big Hit", "Imitation Ice Milk", "Strawberry Big Hit Imitation Ice Milk". In smaller type on one side thereof it has printed thereon "A superior quality product" and in still smaller type the following: "Ingredients water, milk solids non-fat, sucrose, corn syrup solids, pure hydrogenated vegetable fat, stabilizer, emulsifier, natural and artificial flavoring and coloring." There is nothing in the record to indicate that any of the defendants sold said product except in the carton above described. They kept and displayed said product in refrigerated display cases together and intermingled with ice cream and other frozen food products.

Defendants claim that the above numbered sections violate various provisions of the state and federal constitutions among which are the due process and equal protection clauses thereof. We deem it necessary, however, to consider only the Fourteenth Amendment to the federal constitution and Article 2, § 4 of our state constitution, A.R.S., and the excessive exercise of the police power.

We believe the inference may be drawn from the stipulation of facts that the product here involved was not brought into Arizona by defendants or their servants or agents and therefore when it was delivered to defendants it no longer possessed any of the characteristics of an interstate transaction, but that it had become commingled with the mass of commodities within the state and subject to

proper state legislation. We are definitely of the view, however, that so long as it is sold by the local distributor in cartons describing it as an "Imitation Ice Milk" *which is further stipulated to be nutritious, wholesome and healthful* and by the printed information on the carton advises the purchaser thereof of the ingredients used in its preparation showing the percentage of each ingredient used therein, it is not within the police power of the state to prohibit its sale. Under the circumstances above described no one could be deceived as to its nature.

◼ We recognize the fullness and the adequacy of the police power of the state, inherent in sovereignty, to enact legislation for the protection of the safety, health, morals and general welfare of its citizens within constitutional limitations. One of its limitations, however, is that such legislation must bear some reasonable relationship to the object sought to be achieved. Under such circumstances courts will not substitute their judgment for that of the legislature. Edwards v. State Board of Barber Examiners, 72 Ariz. 108, 231 P.2d 450. Applying this test and bearing in mind that courts should give a sensible construction to statutes and uphold them if possible (see State v. Airesearch Mfg. Co., 68 Ariz. 342, 206 P.2d 562) we feel that A.R.S. § 3–630, supra, transcends the police powers of the state for the reason that the food products prohibited are nutritious, wholesome and healthy hence its sale and consumption by the citizens of the state does not affect the health, welfare, safety or morals of its citizens and it cannot deceive or defraud them so long as it is sold in cartons bearing the information above set forth.

◼ It will be observed that the specific charge against defendants is that they sold or had in their possession with intent to sell, an *adulterated* milk product, to wit, "Imitation Ice Milk" or "Imitation Ice Cream" to which had been added a fat or oil other than butter fat contrary to the provisions of the law above quoted. There is no charge of misbranding. There is no charge of fraud other than that the milk is adulterated by a fat or oil other than butter. The record clearly shows that no deception or fraud could possibly result therefrom because full information thereof is given in various size types of print on both sides of the carton container. It is not claimed that the vegetable oil used is injurious in the slightest degree to the health of those who may consume the product involved. On the other hand it is freely admitted that such product is nutritious, wholesome and healthful. Therefore the legislation has no reasonable relationship to any legitimate object or ends sought to be achieved by the legislature in its enactment.

In the case of Dairy Queen of Wisconsin v. McDowell, 260 Wis. 471, 51 N.W.2d

34, 52 N.W.2d 791, plaintiff sought an injunction against the department of agriculture of the state prohibiting it from selling a product similar to ice cream but which contained less butter fat than that required by the department. In that case as in this one, it was admitted that such product was healthful and nutritious. It was claimed the butter fat content in plaintiff's product was less than required by the department which constituted fraud upon the consumer. The court held that the state could not prohibit the sale of such food product as long as it was shown that its consumption did not endanger the public health and welfare. The facts in that case as shown above were somewhat different from the facts in the instant case but the principle involved is the same. The court there cited the case of Rigbers v. City of Atlanta, 7 Ga.App. 411, 66 S.E. 991, 992, wherein a similar conclusion was reached.

The Rigbers case holds that:

" * * *. Even if the city has the power to prescribe that no ice cream of less than a certain percentage of richness in butter fats shall be sold as standard ice cream, it still would not have the power to say that ice cream below that standard should not be sold at all. * * *."

See also Carolene Products Co. v. Banning, 131 Neb. 429, 268 N.W. 313; Carolene Products Co. v. Thomson, 276 Mich. 172, 267 N.W. 608; People v. Carolene Products Co., 345 Ill. 166, 177 N.E. 698; Carolene Products Co. v. McLaughlin, 365 Ill. 62, 5 N.E.2d 447.

The court pointed out that where fraud was perpetrated upon the public as in Carolene Products Co. v. United States, 323 U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15, by abstracting butter fat which was replaced with vegetable oil and where as in the case of Day-Bergwall Co. v. State, 190 Wis. 8, 207 N.W. 959, an artificial vanilla was used instead of pure vanilla, a deception was being practiced upon the public and it was within the police power of the state to prohibit the sale of such products. The court then quoted with approval from United States v. 62 Cases, etc., 10 Cir., 183 F.2d 1014, 1018, in which it was said:

"If it is sold *under a name* of a food for which a definition and standard has been prescribed, if it looks and tastes like such a food, if it is bought, sold and ordered *as such a food*, and if it is served to customers *as such a food*, then it purports to be, and is represented to be, such a food."

We believe this quotation constitutes a fair test of the question of fraud in such cases.

As above pointed out, the product in this case was neither sold under a name of a food for which a definition and standard had been prescribed nor was it bought, sold

and ordered as such a food nor served to customers as such but was clearly stamped with its true character as an imitation product and its ingredients specifically printed on the carton. This differentiates the instant case from the cases cited above authorizing the state to prohibit the sale of such commodity.

 With respect to subsection C of § 3–630, supra, prohibiting the sale of an adulterated dairy product, it will be observed that this statute does not define "adulterated". But if we accept the definition of "adulterated" found in A.R.S. § 36–902 of the Pure Food Act, we say again that the legislature exceeded its police powers in enacting the same. We adopt as a sound pronouncement of the law the language of the Illinois Supreme Court in Carolene Products Co. v. McLaughlin, supra, that [365 Ill. 62, 5 N.E.2d 451]:

"* * * the statute, in declaring conclusively that the mixture of harmless, healthful food products produces an adulterated food and that its sale is a fraud upon the public, invades the province of the judiciary."

and we adopt the further pronouncement made by the court in that case that:

"* * * While the Legislature may enact statutes which affect milk and milk products, the application of the statute to a specific case is a judicial function. By denying vendors such as the plaintiff the right to offer proof with respect to adulteration and fraud, the statute deprives them of due process of law and of the equal protection of the law. * * *." (Citing cases.)

There are decisions of the Supreme Court of the United States and state decisions which hold that a state may, under its police powers, prohibit the sale of a food product even though it may be wholesome and healthful if it is of such a character as to be capable of being confused with other well known articles of food such as milk products as are involved in this case.

Justice Holmes in the case of Hebe Co. v. Shaw, 248 U.S. 297, 39 S.Ct. 125, 126, 63 L.Ed. 255, 259, went so far as to hold that:

"* * *. If the character or effect of the article as intended to be used 'be debatable, the legislature is entitled to its own judgment, and that judgment is not to be superseded by the verdict of the jury,' or, we may add, by the personal opinion of the judges, 'upon the issue which the legislature has decided.' * * *."

He further stated:

"* * *. The purposes to secure a certain minimum of nutritive elements and to prevent fraud may be carried out in this way even though condensed skimmed milk and Hebe both should

200

be admitted to be wholesome. The power of the legislature 'is not to be denied simply because some innocent articles or transactions may be found within the proscribed class. The inquiry must be whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat.' * * *."

From our analysis of the above case favoring legislation by the states, bearing some similarity to the statutes involved in this case, we believe that Justice Holmes went further than any other case we found except the Kansas Court in State ex rel. Mitchell v. Sage Stores Co., 157 Kan. 404, 141 P.2d 655, but when boiled down to its last analysis we believe that Justice Holmes would say in this case that the statute here involved passes the bounds of reason and assumes the character of an arbitrary fiat. The Kansas case, supra, if sound, would justify the legislature in passing a law prohibiting housewives from using vegetable oils in cooking food of any kind. We reject its reasoning and its conclusion.

Other cases holding a contrary view to that which we adopt in the instant case are: United States v. Carolene Products Co., 304 U.S. 144–155, 58 S.Ct. 778, 82 L. Ed. 1234; Carolene Products Co. v. Har-ter, 329 Pa. 49, 197 A. 627, 119 A.L.R. 235; Carolene Products Co. v. United States, 323 U.S. 18–32, 65 S.Ct. 1, 89 L.Ed. 15. The above decisions are all based upon the proposition that such products make it possible for fraud to be perpetrated upon the consumer public. We have shown, not only that the product in the instant case is an imitation ice cream but have shown there is printed upon the carton container the ingredients contained therein.

■ It is our view that § 3–630, supra, is an unreasonable exercise of the police power and violates the due process clause of Article 2, § 4 of the state constitution— and the due process and equal protection clause of the Fourteenth Amendment of the United States Constitution.

If the products here involved were sold in bulk separate from the carton informing the public of its true character, the legislature could properly regulate its sale even to the extent of prohibiting sale thereof if it contained an ingredient injurious to health.

The legal question presented in so far as § 3–630 is concerned is answered in the affirmative.

STRUCKMEYER, UDALL, JOHNSON and BERNSTEIN, JJ., concur.