Crawford C. MARTIN et al., Appellants,

v.

WHOLESOME DAIRY, INC., Appellee.

No. 11652.

Court of Civil Appeals of Texas.

Austin.

Jan. 29, 1969.

Rehearing Denied Feb. 26, 1969.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., A. J. Carubbi, Jr., Executive Asst. Atty. Gen., J. C. Davis, W. O. Shultz and Pat Bailey, Asst. Attys. Gen., Austin, for appellants.

Potash, Cameron, Bernat & Studdard, Don Studdard, El Paso, for appellee.

HUGHES, Justice.

This suit was brought by Wholesome Dairy, Inc., appellee, against Crawford C. Martin, Attorney General of Texas, James E. Peavy, Commissioner, Texas State Board of Health and Manuel D. Hornedo, M.D., Director, El Paso City County Health Unit, seeking a declaratory judgment that Art. 713a, V.T.P.C., is unconstitutional or inapplicable to an imitation milk product known as "Farmer's Daughter High Protein Drink" which appellee desired to manufacture and sell in the State of Texas.[1]

In a non-jury trial the trial court declared Art. 713a, V.T.P.C., unconstitutional and enjoined appellants from enforcing it.

The pertinent portions of Art. 713a read:

"Sec. 1. Where used in this Act:

(a) The word person shall mean any individual, firm, copartnership, or corporation.

(b) Filled milk shall include any milk, cream, or skimmed milk whether or not condensed, evaporated, concentrated, powdered, dried, or desiccated, to which has been added or which has been blended or compounded with any fat or oil other than milk fat so that the resulting product is in imitation or semblance of milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried or desiccated. Provided, that this definition shall not be construed to include any distinctive proprietary food compound prepared, and designated for feeding infants and young children, and cutomarily used on the order of a physician.

Sec. 2. It shall hereafter be unlawful to handle for use, manufacture, or sale within this State any form of filled milk. It is declared that filled milk is an adulterated article of food injurious to the public health, and its sale constitutes a fraud upon the public. It shall be unlawful for any person to manufacture within this State or to ship or deliver for shipment in intrastate commerce any filled milk."

The trial court made and filed findings of fact and conclusions of law, and we quote those deemed material here:

*Findings of Fact*

"2. 'Farmer's Daughter High Protein Drink' is an imitation milk, which, is manufactured by plaintiff, is composed of a mixture of water, nonfat dry milk, coconut oil, corn syrup solids, sodium caseinate, mono-diglycerides, starch, and carotene. This article of food can be

1. Appellee manufactured and sold this product in Texas until deterred by State officials.

manufactured by using various vegetable oils other than coconut oil.

4. An imitation milk product can be made by combining fat-free milk solids with some vegetable oils so that the resulting product will be wholesome, nutritious, beneficial to health, and comparable to although less nutritious than natural whole milk.

5. Reasonable minds can differ as to whether or not an imitation milk product made by combining fat-free milk solids with coconut oil is wholesome, nutritious, beneficial to health, and comparable to natural whole milk.

6. When the 'Farmer's Daughter High Protein Drink' is made with coconut oil and the label of such product represents that it contains only vegetable oil, the product is misleading to persons on a diet intended to reduce their serum cholesterol level.

7. The manner in which 'Farmer's Daughter High Protein Drink' is packaged and labeled is not misleading to the general public and does not mislead people into believing that it is natural whole cow's milk.

8. When consumed as a dietary fat, coconut oil produces a higher serum cholestrol level than other vegetable oils and high serum cholestrol levels are related to coronary heart disease especially atherosclerosis.

9. The 'Farmer's Daughter High Protein Drink' is intended to be used as a dietary replacement for whole cow's milk.

10. When milk fat is removed from cow's milk specific nutrients are removed with the milk fat and these nutrients are not found in the vegetable oil used in lieu of milk fat in a filled milk."

## Conclusions of Law

"4. The Filled Milk Statute, Article 713(a), Texas Penal Code, transcends the police powers of the State for the reason that the food products prohibited are nutritious, wholesome, and healthy; hence, its sale and consumption by the citizens of the State do not affect the health, welfare, safety, or morals of its citizens, and it cannot deceive or defraud them so long as it is sold in cartons bearing the information as shown on Plaintiff's Exhibit 9.

5. A wholesome and nutritious food product such as the one involved in this case may be strictly regulated because of its resemblance to milk, but it may not be prohibited. The prohibition of its manufacture and sale as provided by Article 713(a) is not a valid exercise of the police power, and it is in contravention to Article 1, Section 19, of the Constitution of the State of Texas.

6. The Filled Milk Statute is discrimininatory and arbitrary and denies Plaintiff equal protection of the law as guaranteed by Article 1, Section 3, of the Constitution of the State of Texas, for the reason that it prohibits the sale of harmless compounds when the same are blended so that the product is an imitation of milk, while other forms of imitation products containing substantially identical ingredients are permitted."

The product which appellee desires to sell looks like the milk of a cow, smells like it and tastes like it.

"Farmer's Daughter High Protein Drink" is a mixture of water, nonfat dry milk, coconut oil, corn syrup solids, sodium caseinate, mono-diglycerides, starch and carotene which is an imitation or semblance of milk. Its manufacture and sale is prohibited by Art. 713a.

We picture three sides of the carton in which this imitation milk is marketed. The front or spout side does not have the words "Imitation Milk" on it. The side opposite the front or back side has the nutritional analysis and other lettering on it. The other two sides are identical. As to them

it should be noted that the words "Imitation Milk" are on the slanted portion of the carton which makes the roof like top of the carton.

These cartons are of the same shape and design as the cartons in which whole milk is sold. They are colored in part blue, green, black and white.

PP2A-759-1340 A
PP2A 759 1340 A
PP2A-759-1340 A

PATENTS
ISSUED AND PENDING
BLANKS made under license from
EX-CELL-O CORPORATION by

**pfi POTLATCH FORESTS, INC.**
® DAIRY SERVICE OPERATIONS

# FARMER'S DAUGHTER

NUTRITIONAL ANALYSIS

| | |
|---|---|
| Fat % (Pure veg. oil) | 3.0% |
| Moisture % (Solids 13.58%) | 86.42% |
| Protein % | 3.69% |
| Ash | .67% |
| Lactose | 5.07% |
| Carbohydrates % (by diff.) | 5.23% |
| Calcium — mg. per 100 grams | 128.7 |
| Sodium — mg. per 100 grams | 64.5 |
| Calories per fluid ounce | 15.0 |

**PASTEURIZED HOMOGENIZED IMITATION MILK**

**INGREDIENTS: WATER, NONFAT DRY MILK, VEGETABLE OIL, CORN SYRUP SOLIDS, SODIUM CASEINATE, MONO-DIGLYCERIDES, STARCH AND CAROTENE.
2000 U.S.P. UNITS VITAMIN A AND 400 U.S.P. UNITS VITAMIN D ADDED PER HALF GALLON**

**LICENSED & MANUFACTURED BY WHOLESOME DAIRIES EL PASO, TEXAS 79915**

Appellee bases its contention of unconstitutionality of Art. 713a upon Secs. 3 and 19 of Art. 1 of the Texas Constitution, Vernon's Ann.St. These sections are the "equal rights" and "due course of law" provisions of the Constitution, appellee contending that the statute denies it rights equal to rights accorded other citizens and deprives it of its property without due course of law. On the other hand appellants contend that Art. 713a is a valid exercise of police power by the Legislature. This power is an attribute of sovereignty, not derived from the Constitution but is the

inherent power of the State to protect the peace, health, happiness, and general welfare of the people. Constitutional Law, 12 Tex.Jur.2d, Sec. 70, p. 415.

We make the following quotations in order to authoritatively define the scope of our inquiry herein.

"In passing upon the constitutionality of a statute, we begin with a presumption of validity. It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. The wisdom or expediency of the law is the Legislature's prerogative, not ours. As quoted in this Court's opinion in Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W. 2d 627 at 634 (1939), ' "There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." ' " Smith v. Davis, 426 S.W.2d 827, Tex.Sup. (1968).

"The question of whether a legislative act or ordinance is void is often difficult to determine. This is true because police power is broad and indefinite. It is thought that the following considerations are material and essential to a correct determination of the question: (1) is the ordinance appropriate and reasonably necessary under all the circumstances to accomplish a purpose within the scope of the police power; (2) is the ordinance reasonable in the sense of not being arbitrary and unjust, or is the effect on individuals of the action taken so unduly harsh and hard as to be out of proportion to the end sought to be accomplished. In the case of Houston & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648, 653, 70 L.R.A. 850, Judge Williams used the following language: 'The power is not an arbitrary one, but has its limita-

tions. It is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort, and convenience as consistently as may be with private property rights. As those needs are extensive, various, and indefinite, the power to deal with them is likewise broad, indefinite, and impracticable of precise definition or limitation. But as the citizen cannot be deprived of his property without due process of law, and as a privation by force of the police power fulfills this requirement only when the power is exercised for the purpose of accomplishing, and in a manner appropriate to the accomplishment of, the purposes for which it exists, it may often become necessary for courts, having proper regard to the constitutional safeguard referred to in favor of the citizen, to inquire as to the existence of the facts upon which a given exercise of the power rests, and into the manner of its exercise, and if there has been an invasion of property rights under the guise of this power, without justifying occasion, or in an unreasonable, arbitrary, and oppressive way, to give to the injured party that protection which the Constitution secures.' * * *

It is well settled that matters of policy and of the wisdom of regulations coming within the police power are for legislative rather than judicial determination. 'The question as to whether an act of the Legislature of this state will serve a public use or purpose is, in the first instance, a question for the determination of the Legislature, and that determination or decision cannot be reviewed and the contrary determined by the judiciary except in instances where the legislative determination of the question is palpably and manifestly arbitrary and incorrect.' Neal v. Boog-Scott, Tex.Civ.App., 247 S.W. 689, 691.

■ Courts are thus reluctant to disturb legislative action if the subject matter involved lies within the police power and will not do so unless it clearly

appears that the regulation is unnecessary and unreasonable and not justified by the facts. If there is room for a fair difference of opinion as to the necessity and reasonableness of a legislative enactment or ordinance on a subject which lies within the police power, the courts will not hold it void. 16 C.J.S. Constitutional Law, § 198, page 569. As a practical matter, if this were not the rule, legislative bodies would be without power to legislate in all cases involving police power where there was room for a difference of opinion as to the wisdom and necessity therefor, except subject to the approval of a jury. But courts, in such cases, will not substitute the opinion of a jury for that of the legislative body." City of Coleman v. Rhone, 222 S.W.2d 646, Tex.Civ.App., Eastland, writ ref. (1949).

Many other cases of similar import could be cited.

We will now examine the testimony to determine whether there was a reasonable basis for the Legislature to enact Art. 713a in the exercise of the police power of the State.

Dr. Ralph Hanna, M.D., a pediatrician practicing in Austin, Texas, a member of the County and State Medical Societies, the A.M.A., and the American Academy for Cerebral Palsy, testified, in substance, as follows: Doctor Hanna has examined the Farmer's Daughter High Protein Drink, tasted it, checked its composition and has conducted research in regard to this field and the product. He concludes that from a medical standpoint the product is nutritious; that there is nothing to his knowledge which would make it injurious to public health; that butterfat and coconut oil have approximately the same cholesterol effect and other vegetable oils are more favorable from a cholesterol standpoint than butterfat.

He has used infant formulas made with vegetable oil and milk solids for 32 years and has found that they are beneficial to health and not injurious. Neither whole milk nor an imitation milk serve the same function as baby formulas, and he would not recommend either for small infants."

Dr. Laurence N. Nickey, M.D., a pediatrician practicing in El Paso, Texas, licensed to practice in Arkansas and New Mexico, trained in Vanderbilt University, Texas College of Mines, Baylor University College of Medicine in Houston, certified by the American Board of Pediatrics, Consultant for the Crippled Children's Hospital of New Mexico, El Paso area Headstart program and William Beaumont General Hospital and a member of the teaching staff of R. E. Thomason General Hospital and chief of its Children's Tuberculosis division, pediatric practice chairman for the Texas Pediatrics Society, and the author of numerous medical articles testified, in substance, as follows: Dr. Nickey has made a study of the imitation milk product which included drinking it himself, giving it to his four children for quite a number of days, analyzing information as to the ingredients, and conducting some research in the field.

He testified the primary difference between this product and whole milk is the substitution of vegetable oil for butterfat. Every ingredient in this product is used in many different varieties of infant formulas which are fed to several million babies each year in the United States. The same substitution is made in the manufacture of oleomargarine which is an imitation butter.

Doctor Nickey concludes that in his opinion this imitation milk product is as good nutritionally as whole cow's milk and that there is nothing whatever harmful about the product. Neither whole milk nor imitation milk is intended as a sole diet or a complete food; there is very little difference between the two products from a medical standpoint. There is insufficient information available on the relationship of dietary fat to heart disease to justify general dietary changes by the public (based on American Medical Association position).

Whole cow's milk with butterfat and imitation milk with coconut oil would have an equal cholesteremic effect. An imitation milk with soy products would be superior to whole cow's milk insofar as its cholesteremic effect is concerned.

Dr. James B. Reeves, of El Paso, Texas, professor of biology and head of the biology department of the University of Texas, at El Paso, holder of Bachelor of Science Degree in Zoology and Master of Science in Bacteriology from Louisiana State University, a Ph.D. from the University of Texas at Austin, testified, in substance, as follows: Dr. Reeves ran the same tests on Farmer's Daughter High Protein Drink which are used by the Texas Department of Health to check the purity of milk. These tests were to determine the presence of micro-organisms that might be injurious to health and chemical tests to determine if certain of the substances would be harmful. The standard plate count which is used to determine the total number of bacteria in the product shows that the bacteria count was quite low, and no coloform organisms or streptococcus and streptacoccus were found.

Based on these tests, Doctor Reeves concludes that the product is not injurious to health; that it is a wholesome product from a micro-organism standpoint, and because of the low bacteria count, it would be comparable to a high grade or certified milk.

Dr. John B. Longenecker, holder of a degree in Chemistry from Franklin Marshall College, Master's and Doctor's Degrees in Biochemistry from the University of Texas, and an employe of the Dupont Company and the Mead Johnson Company for several years, the author of numerous articles in the field of biochemistry and nutrition and presently teaching in the University of Texas at Austin, testified, in substance, as follows: Doctor Longenecker has examined the Farmer's Daughter product, made tests to analyze the protein content, amino acid tests to show the composition of the protein, and an analysis to determine the component parts of the product.

He found that the contents are the same as listed on the carton and phosphorus, riboflavin, and thiamine were at the same level or slightly higher than whole milk. Doctor Longenecker has also analyzed whole cow's milk. His findings are that the components are very similar and that the nutritional value of the reconstituted milk would be very similar to that of whole cow's milk and that they compare very favorably. Neither whole milk nor imitation milk are intended to be a sole dietary.

An imitation milk made with coconut oil is essentially the same from a nutritional standpoint as whole cow's milk which contains butterfat, and he would recommend one equally with the other. Other vegetable oils could be used in the imitation product which would give the imitation milk a better fatty acid content than butterfat in whole milk, which would make the imitation product far superior to whole milk.

Milk is not a sole dietary food, and the average adult intake is approximately one glass of milk per day. This is roughly 6½ per cent or 7 per cent of the total daily caloric intake. Children drink two to three times as much milk as adults.

The composition of the dry milk solids is very similar to that of whole milk. The preparation of the processing of the dry milk solids has very little detrimental effect on its nutritional components which has been demonstrated and shown by many, many tests.

Baby formulas are made essentially the same way as imitation milk. In both, the butterfat is replaced with vegetable oil. The results with baby formulas have been excellent, and the manufactured product is superior to whole cow's milk.

From a nutritional standpoint, there is no reason to prohibit the reconstitution of milk solids with some other fat as long as you can show that the product is nutrition-

ally equal to or equivalent to normal milk. Imitation milk made with coconut oil or the more favorable fat or soybean oil would not, in any way, be deleterious or injurious to human health.

An imitation milk product can be made by combining vegetable oil with calcium caseinate instead of using dry milk solids. This product would be inferior to either whole milk or Farmer's Daughter High Protein Drink yet it would not come within the filled milk law.

Dr. Longenecker also testified, and we quote:

"Q Do you know of any specific studies, Dr. Longenecker, that show any deleterious effect of coconut oil as compared to other fats?

A In what respect?

Q Any respect.

A Coconut oil in a food, or coconut oil consumed in high amounts, or what?

Q Any respects, Doctor.

A Well, it's deleterious in its hyper-cholesteremic effect if you go along with the idea that high cholesterol is detrimental to human health.

\*   \*   \*   \*   \*   \*

THE COURT: Do you know whether the medical profession is *of one mind whether or not* a high cholesterol diet is directly related to the disease of the heart?

THE WITNESS: I think the general opinion would be that there is a strong correlation between hypercholestrolemia and the development of eventually of coronary disease. However, it has not been proved that cholesterol is a direct cause. It may be a secondary effect of some type, but there is a strong correlation and I believe that most medical experts would accept this point that there is a strong correlation.

THE COURT: By 'high cholesterol,' do you mean high blood cholesterol or high cholesterol intake?

THE WITNESS: High body cholesterol. It may be in the blood or in the tissues of the body. Of course, the intake of the cholesterol is important, but the normal cholesterol in normal foods, even the cholesterol in milk, is apparently somewhat detrimental, because you do have in butter fat a fat which we can see is slightly different from cocount oil, and yet in both of them the cholesterol is very similar. Therefore, the cholesterol intake with butter fat is helping to elevate the body cholesterol up to a level which is fairly comparable to what coconut oil is, which is slightly lower in essential fatty acids and slightly higher in saturated fatty acids. Therefore, the body cholesterol as it is elevated and gets up above the normal range of two to two hundred and fifty milligrams per hundred millimeters of blood. This would be an indication that the total body cholesterol was also elevated. This would indicate that a person of a high level, say above two hundred or two fifty, would have a much higher risk or chance of developing a coronary disease than a person with a normal level. I think the medical profession has accepted this as an indicator and not as a true, exact fact."

Dr. Edward H. Ahrens, Jr., M.D., has qualifications almost too numerous to mention. They are B.S. and M.D. Degrees, Harvard; Intern and Chief Resident, Babies Hospital, New York; Medical Corp, U.S. Air Force; research position in Rockefeller Institute, National Research Council, National Foundation for Infantile Paralysis, National Science Foundation, Rocke-

feller University; Diplomate, American Board of Pediatrics; membership in twelve technical and honorary societies; member of Advisory Board, Journal of Lipid Research and its editor, chairman U.S.P.H.S., metabolism study section, chairman Board of Scientific Counselors, National Heart Institute, chairman Gordon Conference on Lipid Metabolism, chairman, Diet-Heart Review Panel, National Heart Institute, and member of several other technical committees. Dr. Ahrens testified, in substance, as follows: With regard to serum cholesterol levels, Dr. Aherns can see no reason to think that there would be a difference between Farmer's Daughter High Protein Drink or whole cow's milk. He would not recommend either whole milk or imitation milk made with coconut oil to a person who has had heart trouble. It is clear that he can see no advantage in one product over the other.

Dr. Ahrens also testified, and we quote:

"9. If in the future it is shown that there is a health advantage to be gained by the ingestion of an unsaturated fat diet, then it will become necessary to define the most desirable ratio of polyunsaturated to saturated fatty acids. If the health advantage is directly related to the degree of unsaturation of the dietary fat, it would then seem desirable to aim for the highest ratio of polyunsaturates to saturated acids that can be obtained practically. I would re-emphasize that it has not yet been proven that an unsaturated fat diet confers a health advantage to the general public.

10. There is no question in my mind that the relative amounts of unsaturated and saturated acids in the dietary fat have a direct effect on the level of the serum cholesterol.

11. It would appear from the limited data now at hand that the higher the ratio of polyunsaturates to saturated fatty acids, the lower the level of serum cholesterol in man.

12. I have no reason to believe that the substitution of skimmed milk for whole milk is detrimental to health, even in respect to growing children.

13. I would not recommend a filled milk containing coconut oil instead of butter fat as a part of a regular diet for a person who has had a coronary heart attack, nor for a person who has a serum cholesterol level above 300 mg/100 ml of plasma. Indeed, I would recommend neither of these milks to either category of individual described above. It is clear that I can see no advantage in one product over the other.

14. I consider it would be misleading to represent that a filled milk in which the oil is coconut oil is beneficial to patients on regimens intended to reduce their serum cholesterol levels."

All of the witnesses, the substance of whose testimony has been stated, testified for appellee. The following witnesses whose testimony is stated or quoted testified for appellants.

Dr. Raymond Reiser, biochemist and, at present, Distinguished Professor, Texas A & M University; Bachelor of Arts, Western Reserve University, Ph.D. in Biochemistry, Ohio State University; four years post doctoral training in the Department of Medicine, Duke University; member American Chemical Society, the American Oil Chemists Society and its immediate past president, the American Institute of Nutrition, the American Society of Biological Chemists; President of the Society for Experimental Biologic in Medicine, Southwest Section.

Dr. Rieser is the recipient of the Southwest Regional Award of the American Chemical Society, the Research Career Award from the National Institute of Health, the Distinguished Achievement Award from Texas A & M University, the Canadian Award of Merit and the

Glycerin Producers Award. We quote Dr. Reiser:

"Q What specifically are some of your research accomplishments that have been recognized?

A Well, it's been almost exclusively in the field of lipids. That's the fat and fat-like substances with the mechanism of their absorption, the way they are transported, the synthesis and the way the body makes fat, the way it digests it, transports it in the blood stream and in and out of the liver. A lot of work on the chemistry nature of fat and fat substances. The synthesis and the structure. There have been in total about 125 publications. And, of course, the nutrition. The relationship of different kinds of fats in the diet, and its relationship to the problem of cholesterol and atherosclerosis.

Q And these papers, over a hundred of them, have been published in various medical journals?

A That's right.

Q In addition to your own research, have you kept up with the work of other recognized scientists in the field, and are you familiar with their publications and the data and the results?

A Oh, yes, this is a necessary prerequisite to doing any new research."

The substance of Dr. Reiser's testimony follows: The Farmer's Daughter filled milk is suspect from a nutritional standpoint. When you remove the cream from milk you remove a lot more than fat. Certain unknown factors are also removed which have been demonstrated to have a beneficial nutritive effect. When you replace the cream in milk with a vegetable oil you have an entirely different product.

Coconut oil contains 44–45% lauric acid which has been demonstrated to have a toxic effect.

The Farmer's Daughter filled milk, if consumed as a regular part of one's diet, would have a deleterious effect from a nutritional and biochemical standpoint because of the high amount of lauric acid in coconut oil used in the product.

Coconut oil retards growth, whereas butter fat promotes growth; coconut oil retards calcium absorption, whereas butter fat promotes calcium absorption; coconut oil is not handled by the digestive system as readily as butter fat.

The Farmer's Daughter filled milk is deficient in essential fatty acids.

Coconut oil has a hypercholesteremic effect on serum cholesterol because of the high percentage of lauric and myristic acids in coconut oil. Lauric acid stimulates the synthesis of cholesterol.

Coconut oil raises serum cholesterol level more than butter fat or any other fat.

The Farmer's Daughter filled milk is deleterious to the public health, misleading to persons with serum cholesterol problems, inadequate nutritionally and actually dangerous.

The Farmer's Daughter filled milk does not compare to whole milk from a nutritional standpoint and should not be used as an equivalent of milk.

Even if you use oils other than coconut oil in a filled milk, you might get a pretty good food product, but it is not milk and should not be used like milk. Labeling is not enough to inform the public of what they are getting.

The way Farmer's Daughter filled milk is packaged and marketed is misleading to the public because it gives the impression that it is milk.

No matter what oil you may substitute for butter fat in making a filled milk, if the filled milk is substituted for milk in the diet of the public, it would be injurious to the public health, it would not be the nutritional equivalent of whole milk and should not be used as such.

High serum cholesterol is definitely related to heart disease.

Supporting some aspects of the above summary, we quote from Dr. Reiser:

"Q Now Doctor, taking into account your familiarity with the biochemical and nutritive aspects of the component parts of milk and considering the analysis which has been admitted into evidence which shows the comparison that Farmer's Daughter makes of the constituent parts between their product and cow's milk and the fatty acids in the coconut oil and the fatty acids in the butter fat, do you have an opinion as to the comparative nutritional and biological quality of these two products?

A I do. * * *

Q Doctor, what is that opinion?

A There are at least three areas where one could be suspect of the nutritive value of this filled milk as compared to a fresh whole milk. In the first place, in producing the dry milk solids which is the basis of this product, it's necessary to remove the butter fat in the form of cream. As a matter of fact, that's the whole reason for producing this milk, and that is that they substitute an inexpensive fat for a more expensive fat. When one removes cream, one removes a lot more than just fat, butter fat. The cream consists of fat micelles, the small droplets of fat in milk. These micelles are surrounded with a coating of protein and lecithin and other lipids. The fat contains all the fat-soluble vitamins as well as the cholesterol which is contained in milk and unknown factors too. There appears from the many studies in literature that there is somethng in milk that has a very beneficial nutritive effect and they have not as yet been able to find the answer as to just what it is.

Q It is suspected to be contained in the butter fat?

A It is in the butter fat.

Q * * * do you have an opinion as to whether a product as the Farmer's Daughter product as constituted by the analyses shown on the exhibit which has been admitted into evidence and with which you are familiar, as to whether or not a product such as that would be injurious to the public health?

A Taking for granted that the analyses and the composition that the Farmer's Daughter people have made themselves, using their statement, I would say that this product with that high level of coconut oil, twenty per cent of the calories, to anyone ingesting it, it would certainly be deleterious to health. It would be misleading even to adults who would take this in preference to 'regular whole milk' when they are trying to avoid cholesterol in the diet. So therefore, in answer to your question, it would be detrimental to the health of the small child who depend upon it for a large part of their calories in foods because of the effect of the Lauric Acid, and detrimental even to an adult who may drink this milk only in small amounts if he is depending on it at all as a substitute for whole milk, because he has a cholesterol problem.

Q All right. Aside from the cholesterol aspects of it, would such a product also tend to have a deleterious effect or injurious effect to the health of categories of persons on marginal diets or already on deficient diets, I'm speaking of the nutritional quality of this product, would it also tend to have a deleterious effect on those persons when substituted for whole milk in their diet?

A If a person would substitute this milk under the impression that they are getting just as good a product as if they were drinking whole milk, they will not get that nutrition. You take a person on a marginal diet, nutritionally speaking, indigent people or poor people, children from disadvantaged homes, who might be able to obtain this inexpensively or as a gift as we heard yesterday, if this is used for a very large part of this regular diet, which is marginal, then the toxic effect of the high Lauric Acid becomes exaggerated, emphasized, and there lies the danger. The

expectation that this is going to be equivalent to and no more harmful, I hate to say that, as beneficial as whole milk is, it would be detrimental. Nutritionally inadequate and dangerous, actually.

Q What would be your opinion about furnishing it in the public school lunch programs?

A Well, here's the case where we are going to run into it for children who are going to depend upon it for a large part of their food intake. Children who may come to school without any breakfast, and may go home to some very poor diet. This is the only opportunity they have to get a well-balanced diet of milk. These children would be jeopardized, their health would be.

Q What about elderly people who are in financial straits? We have many elderly people that we all know that are on social security or depend wholly on welfare for their sole monetary intake, and those people we would imagine would be on rather marginal diets, what about elderly people?

A It isn't only the indigenous (sic) old people, there's a lot of folks because of lack of teeth who depend on a large part of their diet on milk. They do turn back to milk, and here I think we could find the same—again, these older people are inclined not to eat proper meals. This theory is well known amongst the people who have studied the aged. They have increased demand for proper nutrition and yet they are inclined to cheat very much on their food. They don't take an interest in food, they don't try to prepare food, and they do have an increase in intake of milk again, and so we do have the same problem here again. * * *

A In my mind between, the value between, butter fat and coconut oil. To me the important thing is the misleading effect of putting this coconut oil in milk and then saying that here we have a vegetable oil. Even if the vegetable oil were equal to butter, my point would be exactly the same.

You have taken the butter out and you have put a vegetable oil in, and you are misleading the people into thinking that now they have a polyunsaturated or harmless milk.

Q I see your concern, Doctor, and you want to be sure you get a good product.

A Yes, sir.

Q And you want them to know what they are getting.

A Yes, sir.

Q Couldn't that be done by regulation and by labeling, Doctor?

A If the regulations would include clinical and scientific testing.

Q I mean a regulation that says on the label what the contents are in the product.

A That wouldn't be enough. Let's say you have a very honest label that has the contents on it. The bulk of the population, if you still called it milk, and the ordinary person would read down the label, and this looks pretty healthy and as far as they know, it's cheaper than milk, so they buy it, and they wouldn't know what they are buying. * * *

Q Let's go to the filled milk statute and see if in your opinion it accomplishes what it should accomplish. If you have a product made with soybean oil or some vegetable oil like the margarines and you put nonfat dry milk solids with it and make an imitation milk product, and it's admitted between us here, Doctor, that it would be wholesome, nutritious, and not injurious to health, should that produce be excluded from the market?

A I have an opinion. I feel that these regulations—that the public should not be deceived into an imitation product when they want to buy milk. A person goes into a grocery store and he wants to buy milk, and he finds another product called milk in the same kind of container, and it has a much lower price, and he has confidence in the Government too, and if that thing says it's milk, then it's milk. In order to

protect this person, the consumer, who might not be sophisticated enough by himself to read the label and say that this is not really milk, and I feel that this is a reason. If another product is not milk, and it may be better than milk, but it is not milk and it shouldn't be called milk.

Q Let me show you my carton. What could we do to this carton to make it in your opinion not misleading?

A This is unfortunately in a milk carton. * * *

Q Doctor, do you have an opinion as to whether there is a relationship between serum cholesterol and some heart disease?

A I don't think there's any question about it. People that suffer heart attacks with rare exception, are found to have high serum cholesterol, and a person with a high serum cholesterol is a risk, and you can predict that they will some day have coronary trouble.

Q Let me ask you this, Doctor; a filled milk product, no matter what the oil substituted for the butter fat is, is not a nutritional equivalent of milk, is it?

A Not the equivalent of milk. * * *

Q As I understand your testimony, you say that this thing [carton] is misleading because of cholesterol?

A Yes, sir, I think it is.

Q If you use coconut oil, is it misleading because of cholesterol?

A I think it is, personally.

Q Why?

A Because of the studies that I'm aware of that shows that coconut oil is a hypercholesteremic fat. The general public, in my opinion, feel that anything that is vegetable fat is automatically polyunsaturated and anything that is polyunsaturated must be a fact in reducing blood cholesterol, and in fact this isn't true. In fact, many consumers today feel, I'm sure, that vegetable fats aren't as fattening as animal fats because of the mass communications and advertising."

Dr. Marion F. Brink, at present Director of Nutrition for the National Dairy Council, has B.S. and M.S. (in Nutrition) Degrees from the University of Illinois and a Ph.D. in Biochemistry from the University of Missouri. He spent one year with the Naval Radiological Defense Laboratory in San Francisco after which he joined the Dairy Council as Associate Director and assumed his present position in 1965. He is a member of the American Institute of Nutrition, affiliate membership in the American Medical Association, member of the American Oil Chemists Society and President of the Association of Vitamin Chemists. He works with the Food and Nutrition Board of the National Academy of Science and the National Research Council, the U.S. Department of Public Health, the National Institutes of Health and the United States Department of Agriculture. In addition Dr. Brink is secretary of the Special Dairy Industry Board whose sole purpose is to support diet in the area of heart disease.

The substance of Dr. Brink's testimony follows: A filled milk made with coconut oil is not the nutritional equivalent of cow's milk and should not be used as such. It is deficient in the essential fatty acid, linoleic acid.

Labeling a filled milk as being made with vegetable oil when it is made with coconut oil is misleading to the public and the medical profession because it gives the impression that the product is high in linoleic acid when it is not.

Coconut oil contains 45% lauric acid which is an irritant.

Filled milk products do not have protein of the same biological value as whole milk.

When the butter fat in milk is replaced by a vegetable oil there is a detrimental effect upon the nutritional and biological value of the nutrients which are normally supplied by whole milk.

Filled milk products can be injurious to the public health.

In the absence of feeding studies, filled milk products made with any vegetable oil are bad from a nutritional standpoint.

Coconut oil has a greater hypercholesteremic effect than butter fat.

Other witnesses and the substance of their testimony follows: Mr. Bernard Schoichet, President of Wholesome Dairy, Inc., testified as to his dairy operation and the influence over recent years of imitation products. Imitation butter, which is margarine, has been on the market for 25 to 30 years. Margarine has replaced 90 per cent of the butter market. Most coffee cream sold today is an imitation product. Whipping cream, ice cream, eggnog, chocolate milk, and cream dips are all available and sold as imitation products. In all of these foods, butter fat is replaced by a vegetable oil.

Mr. Schoichet described the process for making dry milk powder, and he is installing equipment at his plant for this purpose. He also told how Farmer's Daughter High Protein Drink is manufactured and that the product can be made using various types of vegetable oils.

Mr. James L. Fritz, the Executive Vice President and General Manager of Farmer's Daughter, Inc., testified as to the present marketing of Farmer's Daughter High Protein Drink. The product is being marketed in 14 states and several foreign countries. It is also being sold to the United States Government for use at military bases as well as many schools and hospitals.

Mr. D. H. Evans is the Director of the Division of Milk and Dairy Products, State Health Department. It is his duty to enforce Article 713a, Vernon's Texas Penal Code, and his office is prohibiting the manufacture of Farmer's Daughter High Protein Drink.

The State Department of Health has a complete laboratory and is staffed by chemists, bacteriologists, microbacteriologists and nutritionists. They have all examined the Farmer's Daughter High Protein Drink, and from a health standpoint, they do not know of anything that is wrong with the product.

Many other products which contain dry milk solids combined with vegetable oil, such as chocolate milk, margarines, infant formulas, coffee creams, ice cream, and holiday nog, are being marketed in the State without objection from his department.

An imitation milk product which does not contain dry milk solids but contains in place thereof sodium caseinate would be inferior and less nutritious than Farmer's Daughter High Protein Drink, but such a product is not prohibited by his department.

Appellants have but one point of error which is:

"The trial court erred in holding that Article 713a, Vernon's Penal Code, is an invalid exercise of the police power and therefore violates Sections 3 and 19 of Article I of the Texas Constitution.

A. There is evidence upon which reasonable minds could differ as to whether filled milk products are injurious to the public health.

B. The conclusion of the trial court that a filled milk product sold in a carton bearing the information shown on Plaintiff's Exhibit No. 9 would not be deceptive or fraudulent to the public is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust."

We sustain this point of error in its entirety.

█ We have gone to unusual lengths in reciting the testimony and in giving the qualifications of the expert witnesses. We have done this in order to demonstrate that there exists a reasonable basis for the exercise of legislative discretion in the field of regulating or prohibiting the sale of filled milk, and because of a cross point by appellee to be noticed later.

We will not undertake repetition of the evidence upon which these conclusions are based. The evidence speaks for itself. There are contradictions between highly qualified and eminent expert witnesses. This is to be expected in this day of deep research into all facets of life. When scientists agree on the beneficial and harmful effects of animal fat as opposed to vegetable fat or between whole milk and filled milk on the human body then will be the time to attack legislation onerously distinguishing between them. This record reveals that there is no meeting of the scientific minds on this subject.

We wish to point out that our statute does not categorically prohibit the sale of filled milk. It does so only when the resulting product "is in imitation or semblance of milk." If Farmer's Daughter High Protein Drink advertised as imitation milk wishes to compete on its merits alone and without reliance on milk for its success as it does when it is manufactured and marketed in imitation and semblance of milk, there is no statute to prevent it. This is illustrated by the many products such as chocolate milk, margarines, infant formulas, coffee cream, ice cream and nogs, the manufacture and sale of which would be prohibited as filled milk if they were a product in imitation or semblance of milk.

Many other Courts have considered statutes of similar import to our Art. 713a, the latest case cited to us being Reesman et ux. v. State of Washington, 445 P.2d 1004 (Wash.1968). This case involved the same product, Farmer's Daughter High Protein Drink with which we are concerned and a statute very similar to ours. In sustaining the constitutionality of this statute the Court distinguished the principal authorities upon which appellee relies here, and we quote from that opinion:

"By RCW 15.38.020(1) the legislature elected to prohibit the manufacture and marketing of any filled dairy product. The effective scope of this prohibition is limited, however, by the restrictive definition of filled dairy products found in RCW 15.38.010(2), which provides that such products must not only contain, as an ingredient, a fat or oil other than milk fat, but must, in addition, be in imitation of or semblance to a genuine dairy product.

Recognizing this limitation, respondents, nevertheless, contend that it is unreasonable and arbitrary to place an absolute prohibition on a product which is otherwise wholesome and nutritious, merely because of a variation in its ingredients and its resemblance to another product. They assert that a system of regulation over retailing practices would more rationally and reasonably relate to and effect the prevention of consumer confusion, deception, and fraud. They support this contention with citations to cases in several jurisdictions where filled dairy products statutes have been declared invalid because of their prohibitory aspects. In this regard they point to People v. Carolene Products Co., 345 Ill. 166, 177 N.E. 698 (1931); Carolene Products Co. v. Thomson, 276 Mich. 172, 267 N.W. 608 (1936); Carolene Products Co. v. Banning, 131 Neb. 429, 268 N.W. 313 (1936); and State v. A. J. Bayless Markets, Inc., 86 Ariz. 193, 342 P.2d 1088 (1959).

Each of these cases, and the arguments against legislative prohibition contained therein, is distinguishable from the instant case on the basis of the language of the respective statutes involved. On the one hand, the statutes of the jurisdictions supporting respondents' contentions undertake to prohibit filled dairy products solely upon the basis of their non-dairy ingredients, and regardless of their imitation or semblance to genuine dairy products. Thus, these statutes contain a sweeping prohibition of virtually all dealings in such products in their effort to reach the evil of consumer deception and fraud. Their scope thereby exceeds their purpose.

On the other hand, as we have pointed out, the pertinent statute of this state

**602**

prohibits dealings in dairy products containing a fat or oil other than milk fat only if such products are in 'imitation or semblance' of a genuine dairy product. Manufacturers and distributors of products such as Farmer's Daughter are not, therefore, absolutely prohibited from carrying on business. They can readily avoid the limited aspect of the legislation by not making and marketing their products so as to be in imitation or semblance of a dairy product. The scope of the statute is thereby limited to and logically related to its purpose."

In Quality Food Products, Inc. v. Beard, 286 F.Supp. 351, U.S. District Court, M.D. Alabama, N.D. (1968), involving the same product in question here, the three judge Court sustained the constitutionality of an Alabama statute not containing the express requirement that the product be in imitation or semblance of milk. Without citing or discussing all of the cases cited to us, we agree with the statement made by Circuit Judge Rives in his concurring opinion in Alabama, supra, that, "The undeniable fact is that the great weight of authority supports our majority opinion."

■ We set aside finding of fact number seven, supra, as being against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We reach this conclusion from a consideration of the entire record.

Appellee has a cross point to the effect the opinion testimony of Doctors Reiser and Brink was inadmissible because neither of these gentlemen had tested Farmer's Daughter High Protein Drink or milk or milk products.

■ We have given the technical qualifications of these doctors which together with their experience and studies in their respective fields, reflected by the record, makes admissible their opinions on the matters about which they testified regardless of the fact that they did not make the tests mentioned by appellee. The results of some of these tests are established by the admission of appellee. In regard to the admissibility of these opinions see McCormick and Ray, Texas Law of Evidence, 2nd ed., Sec. 1400, Coffee v. William Marsh Rice University, 408 S.W.2d 269, Tex.Civ.App. Houston, writ ref. n. r. e. (1966). Lone Star Gas Company v. Thomas, 345 S.W.2d 844, Tex.Civ.App. Fort Worth, writ ref. n. r. e. (1961), Schooler v. State, 175 S.W. 2d 664, Tex.Civ.App. El Paso, writ ref. w. o. m. (1943), Winn v. State, 136 Tex.Cr. R. 513, 126 S.W.2d 481 (1939), Expert and Opinion Evidence, Vol. 31, Am.Jur.2d Secs. 26, 27.

■ The judgment of the trial court is reversed and judgment is here rendered declaring Art. 713a of Vernon's Texas Penal Code to be valid and constitutional as written and as applied to Farmer's Daughter High Protein Drink, and dissolving the injunction granted to prohibit its enforcement.

Reversed and rendered.